FLORIDA EAST COAST RAILWAY COMPANY, *Plaintiff in Error*, v. MIRIAM L. PIERCE AND DABNEY J. PIERCE, HER HUSBAND, *Defendants in Error*.

Opinion Filed Feb. 11, 1913.

In an action for an alleged negligent injury where the evidence or liability is conflicting, the finding of the jury will not be disturbed when no controlling reason for doing so appears by the record.

Writ of error to the Circuit Court for Duval County.

Judgment affirmed.

*Alex. St. Clair-Abrams*, for Plaintiff in Error;

*A. H. King*, for Defendants in Error.

WHITFIELD, J.—The count of the declaration on which judgment was rendered alleges in effect that the plaintiff wife while proceeding to board a passenger train of defendant, it being dark, she stumbled and fell over a large piece of timber carelessly and negligently allowed by the defendant to be on the ground near the platform of the car at the place where she had been directed by defendant's train men to board the train, the plaintiff being thereby injured, from which she suffered, and continues to suffer, and the husband has been deprived of the services, companionship and wifely attention, society and aid of and consortment with the wife, and the plaintiffs were obliged to expend sums to cure the wife. Damages in $25,000.00 were claimed. Special pleas having been stricken on motion, trial was had on a plea of not guilty under which plea evidence was admitted appropriate to the issues tendered by the stricken pleas. One of the main contentions was the alleged negligence in allowing a piece of timber to be at the place where the plaintiff, Miriam L. Pierce, was proceeding in the dark to board the train as directed by the trainmen. Judgment for $12,500.00 was rendered, and defendant took writ of error. Fifty-six errors are assigned and more or less argued, but a discussion of them in detail will serve no useful purpose. Conflicts in the evidence as to whether the plaintiff's wife was in fact directed by the defendant's trainmen to board the train that was not at the regular place for taking on passengers, have been settled by the jury, and the record affords no controlling reason for disturbing the finding of liability against the defendant. There is evidence that when Mrs. Pierce fell over the piece of timber she was rendered unconscious for awhile, and that she has suffered greatly more or less ever since. A physician testifying for the plaintiffs

stated that while examining Mrs. Pierce to ascertain her injuries she fainted and lost consciousness entirely; she suffered great pain, was very nervous and spit blood. The physician discovered two ribs broken, her ankle was badly sprained, the external ligaments of an ankle were ruptured and she has suffered from it ever since. He doubted if her ankle would ever be as strong again as it had been. She still suffers pain and great inconvenience. He did not think the ankle would ever get well. A physician appointed by the court examined Mrs. Pierce just before the trial and testified that he could find no evidence of injury to the chest wall, the ribs, the lungs or the pleura so far as he could make out with his finger. There was no evidence of callous or depression of the ribs. Mrs. Pierce then complained of pains in the chest. He found a puffiness of the right ankle at the outer side, along the line of the exterior lateral ligament that was caused by a severe sprain, a rupture of the auxiliary ligament, that is the main ligament of the ankle joint. This injury to the ankle would not be permanent, although the ankle will be weak for some time.

There is testimony that Mrs. Pierce was by the injury rendered unable to walk with comfort; that she was in bed three or four weeks and complained of her side for six weeks or two months. There is no evidence of sums paid out by the plaintiffs because of the injury or of specific losses of any kind to the husband or the wife, though there is evidence that a physician attended Mrs. Pierce for several weeks.

The liability of the defendant is not so clearly established as it was in Florida East Coast R. Co. v. Schumacher, 63 Fla. 137, 57 South. Rep. 603, but regarding liability as being shown in this case and conceding that the injuries here are somewhat greater than in the Schu-

macher case, and that there were expenses incident to physician's services to Mrs. Pierce, yet, in the opinion of the writer and Mr. Justice Taylor, the verdict is excessive, for, as in the Schumacher case, there is no basis for punitive damages. But a majority of the court are of opinion that the amount of damages awarded is not so large as to require interference by an appellate court, therefore the judgment is affirmed.

SHACKLEFORD, C. J., AND COCKRELL AND HOCKER, J. J., concur.

HOCKER, J., concurring.

I agree with Justice WHITFIELD that the evidence in this case justified a verdict for the defendants in error. As has been said in previous opinions of this court, to determine in a case like this, which is one involving damages for personal injury, pain, etc., whether the verdict is excessive is one presenting the utmost difficulty to an appellate court. The rule which should, as far as possible, govern the court, has been discussed in Atlantic Coast Line R. R. Co. v. Beazley, 54 Fla. 311, 45 South. Rep. 761, and Atlantic Coast Line R. R. Co. v. Whitney, decided here at the present term.

In addition to the authorities cited in the foregoing cases I refer to the important note in 16 An. Case, p. 8 *et seq.*, and to the opinion of KENT, C. J., in Coleman v. Southwick, 9 Johnson, 45, 6 Am. Dec. 253. On the subject of damages in actions of torts he says: "The law has not laid down what shall be the measure of damages in actions of·tort. The measure is vague and uncertain, depending upon a vast variety of causes, facts and circumstances, as the state, degree, quality, trade, or

profession of the party injured, as well as of the party who did the injury. The court cannot interfere, unless the damages are apparent, so that they can properly judge of the degree of the injury. Generally in such cases they cannot say whether five hundred pounds was too much, or fifty pounds would have been too little. The damages, therefore, must be so excessive as to strike mankind, at first blush, as being beyond all measure unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for they have no standard by which to ascertain the excess. These are the principles which have been laid down by the most eminent judges which have presided in the English courts since the year 1760;" citing authorities. See also the opinion of the Judge STORY in Whipple v. Cumberland Manuf'd. Co., 29 Fed. Cas. No. 17,516 (2 Story 661). These were the opinions of distinguished judges of a former generation, but they are not followed in all courts. See 13 Cyc. 121, et seq. and 4 Sedwick on Damages (9th ed.), Sec. 1325 et seq.

It is apparent ,however, from our own opinions as well as those of other courts that an appellate court should not set aside a verdict except where the circumstances of the case or the evidence produced indicate that the verdict has been the result of bias, prejudice or gross overestimate.

I do not agree with Justice WHITFIELD in directing a remittitur. It is said in 18 Ency. Pl. & Pr. 128, that the power of the court to permit or require a remittitur is only exercised in cases where the amount of the excess is apparent, or is readily ascertainable, quoting au-

thorities from a number of States. In the instant case there are absolutely no data by which this court can determine the amount of the excess of the damages.