ATLANTIC COAST LINE RAILROAD COMPANY, A CORPORA-
TION, *Plaintiff in Error,* v. SHERMAN· HOLLIDAY, *De-
fendant in Error.*

## Opinion Filed February 7, 1917.

1. Where a writ of error purports to be taken to a final judgment and no such final judgment as will support a writ of error appears in the transcript, the appellate court should dismiss such writ whether a motion is made for that purpose or not; but, in order to warrant the court in acting *ex mero motu* in the matter, such insufficiency or invalidity must appear on the face of the judgment itself or be affirmatively shown by the transcript; if evidence *aliunde* is necessary, the opposing party should file a motion to dismiss and introduce such evidence.

2. In this State there is no statute or rule of ·court requiring each separate judgment rendered in open court in term time to be signed either by the judge or clerk.

3. Section 1831 of the General Statutes of 1906 provides that the Clerk of the Circuit Court "shall keep minute books, in which he shall keep regular and fair minutes of all the proceedings of the Circuit Court, and of the judge, in term or vacation, which shall be signed by the judge before the adjournment of the term."

4. The better practice, as a general rule, is for the entry of a judgment rendered in term time to follow the verdict in the minutes of the court, as the date thereof would then be readily apparent, which is important, as Section 1699 of the General Statutes of 1906 provides that all writs of error to judgments in civil actions shall be sued out and taken within six months from the date of· such judgment.

5. A judgment in an action at law is rendered when it is entered or recorded in the minutes of the court during term time or when in vacation it is put in form for such entry or record and is signed by the judge.

6. Where the transcript shows that a case came on for trial before a jury on the 3rd day of January, 1916, that a verdict was returned therein on the 6th day of such month, that the bill of exceptions therein was settled and signed on the 29th day of April, 1916, that a final judgment in sufficient form was rendered and entered in the minutes of the court, but it does not appear on what day or month such judgment was rendered or entered, and that a writ of error to such judgment was sued out on the 10th day of April, 1916, this judgment is such a final judgment as will support the writ of error, and the appellate court will not dismiss such writ of error *ex mero motu.*

7. It is the duty of an attorney at law to take all such steps as may be necessary for the due entry and enrollment of a judgment to which his client is entitled; and his neglect of such duty may render him liable for any loss sustained by the client.

8. Where one of the assignments of error is based upon the overruling of the demurrer to the declaration, the better practice is for the plaintiff in error to discuss such assignment first in his brief for the reason that, where there is no sufficient declaration in a case, and a demurrer should have been sustained thereto, the other questions in the record are not open for the consideration of the appellate court.

9. While an assignment of error based upon the overruling of the demurrer interposed to the declaration is not required to designate or specify the particular grounds of the demurrer relied on, the plaintiff in error will be confined to the grounds stated in the demurrer and argued in the appellate court, the grounds thereof not argued being treated as abandoned, the only exception thereto being where there is an omission in the declaration of allegations of substantive facts which are essential to a right of action, so that the declaration wholly fails to state a cause of action.

10. In actions for negligent injuries it may be necessary to allege only the relations between the parties out of which the duty to avoid negligence arises, and the act or omission that proximately caused the injury, coupled with a statement that such act or omission was negligently done or omitted.

11. A declaration should contain sufficient allegations of all the facts that are necessary to state a cause of action. As a general rule, only ultimate facts need be alleged.

12. Inquiry into collateral matters, on the cross-examination of a witness, should not be permitted unless there is reason to believe that it may tend to promote the ends of justice and it seems essential to the true estimation of the testimony of the witness by the jury.

13. The evidence adduced in an action should be confined to the issues, and a witness cannot be cross-examined as to any fact which is collateral or irrelevant to the issue merely for the purpose of contradicting him by other evidence if he should deny it, thereby to discredit his testimony.

14. No error is committed by the trial court in refusing to permit a witness, on his cross-examination to answer a question which is not in cross of any matters elicited on the direct examination and when the answer thereto, whichever way it might be, would not tend to prove the issues as made by the pleadings.

15. Objections are properly sustained to questions which seek to elicit testimony outside of the issues in an action.

16. Technical errors either in the giving of charges or instructions or in the refusal of requested instructions will not be sufficient to work a reversal of the judgment, if it appears that such errors could not reasonably have been prejudicial to the plaintiff in error and did not deprive it of any fundamental right to which it was entitled.

17. Even though both the plaintiff and the defendant ignore a statute and proceed as though such statute did not exist or had no applicability and fail to bring the same to the attention of the trial judge, by whom it was also evidently

overlooked, if such statute is applicable and controlling, it is the duty of an appellate court to take judicial cognizance of it.

18. Notwithstanding that an action at law may have been tried in part upon an erroneous or immaterial issue, such immaterial issue will not work a reversal of the judgment rendered against a defendant, when it appears that such immaterial issue was brought about by the filing of a plea by the defendant, upon which the plaintiff joined issue, and that the case was also tried upon other issues which were material and relevant, that the rights of the defendant were not thereby prejudiced and that the rights of the parties litigant could be and were determined upon the other issues which were submitted to the jury.

19. Chapter 6521, Acts of 1913, defines and enlarges the liability of employers for injuries to employees engaged in the hazardous occupations therein stated, and the language of the statute should be given its proper meaning and effect.

20. The term "engaged in * * * railroading," as used in Chapter 6521 of the Laws of Florida (Acts of 1913, Vol. 1, 383), is sufficiently comprehensive to apply to the liability of a railroad company to an employee whose duty it was under the terms of his employment to care for and look after a large number of artificial lights, situated in the yards and between and adjacent to the tracks of such railway company, and to see that such lights were kept burning and the lamps thereof properly filled in the day time and in the night time.

21. Under Section 3150 of the General Statutes of 1906, an employee who is not "without fault or negligence" cannot recover for damages "caused by negligence of another employee," while under Chapter 6521, an employee who is "injured in part through his own negligence and in part through the negligence of another employee," may recover damages from the employer unless both employees were fellow servants and they were "jointly engaged in performing the act causing the injury."

22. Even if an employee of a railroad company, whose duty it was under the terms of his employment to care for the artificial lights of such company situated in the yards, and the conductor and engineer engaged in operating a train of the

railroad company could· be said to be fellow servants, such fact would not preclude such employee from recovering ·damages for personal injuries inflicted on him through the negligence of the ·railroad company, even if the proofs adduced established the fact that such employee's own negligence contributed in part to such injury, when such conductor and engineer and the plaintiff employee were not "jointly engaged in performing the act causing the injury."

23. Where Chapter 6521 of the Laws of Florida, (Acts of 1913, Vol. 1, 383), controls and is applicable in an action, assumption of risk is not permissible as a defense, being expressly prohibited by Section 4 of such Chapter.

24. When there is substantial legal evidence to support the verdict, and there is nothing to indicate that the jury misapplied the law, and·it does not appear by an overwhelming preponderance of the weight of the evidence or otherwise that the jury were not governed by the evidence in making their finding, the appellate court will not reverse the judgment on the ground that the verdict is not supported by the evidence.

25. The credibility and probative force of conflicting testimony are for the determination of the jury.

26. Evidence examined and found sufficient to support the verdict rendered.

Writ of Error to Circuit Court for Hillsborough County; F. M. Robles, Judge.

Judgment affirmed.

*Sparkman & Carter,* for Plaintiff in Error;

*Dickenson & Dickenson,* for Defendant in Error.

SHACKLEFORD, J.—Sherman Holliday brought an action at law against the Atlantic Coast Line Railroad Company, a corporation, for the recovery of damages for

personal injuries received by the plaintiff, which are alleged to have been occasioned by the negligence of the defendant.   A trial was had before a jury, which resulted in a verdict in favor of the plaintiff in the sum of $3,000.-oo.   The defendant seeks to have the judgment rendered thereon reviewed here by writ of error and has assigned numerous errors.   We shall consider and discuss such of the assignments as are argued here which we deem necessary for a proper disposition of the case, but before taking up any of the assignments we must dispose of a contention which the plaintiff makes *in limine*.

It is insisted that what purports to be a final judgment, copied in the transcript of the record is not such a final judgment as will support a writ of error.   We find that the transcript shows the following proceedings:

"On the 6th day of January, 1916, at a term of said court, came the respective parties by their attorneys and submitted said cause, on the issues joined between them, to a jury, who were duly sworn according to law, and who, having heard the evidence, the charge of the court and argument of counsel, returned the following verdict:

" 'SHERMAN HOLLIDAY vs. A. C. L. R. R. Co.

" 'We the jury find for the plaintiff and assess his damages in the sum of ($3000.00) So say we all.

" ' J. B. Hundley, Foreman.'

"On the ———day of ———, 1916, the following judgment upon the verdict of the jury was entered by the court:

"The record of the judgment as the same appears in 'minutes 26 Circuit Court' on page 380, is in the words and figures following:

" 'Thereupon it is ordered and adjudged that the Plaintiff Sherman Holliday do have and recover of and from

the Defendant Atlantic Coast Line R. R. Co. a corporation the sum of ($3000.00) as damages and a further sum of $ Nine & 18/100 Dollars his costs in this behalf expended, for which let execution issue.' "

Undoubtedly, if this is not such a final judgment as will support a writ of error, we would have to dismiss such writ, whether a motion be made for that purpose or not, as we have frequently held.   See Goldring v. Reid, 60 Fla. 78, 53 South. Rep. 503.   But, in order to warrant this court in acting *ex mero motu* in the matter, such insufficiency or invalidity must appear on the face of the judgment itself or be affirmatively shown by the transcript.   If evidence *aliunde* is nessary, the opposing party should file a motion to dismiss and introduce such evidence.   No such motion has been made in this case and no evidence *aliunde* introduced.   The case has been briefed on the merits by each party litigant and the plaintiff has attempted to raise such point in his brief, relying upon the face of the transcript.   He contends that such judgment is insufficient because the same is not signed either by the judge or clerk, and it does not appear when the same was entered.   There is no merit in this contention. We have no statute or rule of court requiring judgments rendered in open court in term time to be signed either by the judge or clerk.   Section 1831 of the General Statutes of 1906 provides that the Clerk of the Circuit Court "shall keep Minute Books, in which he shall keep regular and fair minutes of all the proceedings of the Circuit Court, and of the judge, in term or vacation, which shall be signed by the judge before the adjournment of the term." See McClerkin v. State, 20 Fla. 879; Simmons v. Hanne, 50 Fla. 267, text 270, 39 South. Rep. 77, 7 Ann. Cas. 267; Pittsburg Steel Co., v. Streety, 60 Fla. 183, 53 South. Rep. 505.   The better practice, as a general rule, would be for

the entry of a judgment rendered in term time to follow the verdict in the minutes of the court, as the date thereof would then be readily apparent, which is important, as Section 1699 of the General Statutes of 1906 provides that all writs of error in judgments in civil actions shall be sued out and taken within six months from the date of the judgment. See Eaton v. McCaskill, 53 Fla. 513, 43 South. Rep. 447. It does appear by the transcript and the certificate of the Clerk appended thereto that the judgment which we have copied above was rendered in the instant case and that the same was entered in the minutes of the court, but it does not appear on what day and month the same was rendered rendered or entered. Does this make such judgment so fatally defective that we should dismiss the writ of error *ex mero motu?* We do not think so. We cannot assume, in the absence of any proof to that effect, that the writ of error was not sued out within six months from the date of such judgment. As we held in Pittsburg Steel Co. v. Streetly, *supra;* "A judgment in an action at law is rendered when it is entered or recorded in the minutes of the court during term time or when in vacation it is put in form for such entry or record and is signed by the judge."

The transcript shows that the case came on for trial on the 3rd day of January, 1916, before a jury, that a verdict was returned therein on the 6th day of such month, that the bill of exceptions therein was settled and signed on the 29th day of April, 1916, that a final judgment in sufficient form was rendered and entered in the minutes of the court and that a writ of error to such judgment was sued out on the 10th day of April, 1916. We must hold that this contention of the plaintiff has not been sustained. We think it is advisable to call attention to the fact as is stated in 1 Thornton's Attorneys at Law,

Section 322, that "It is the duty of an attorney to take all such steps as may be necessary for the due entry and enrollment of a judgment to which his client is entitled; and his neglect of such duty will render him liable for any loss sustained by his client."

We now direct our attention to the assignments of error. The 59th assignment, which is based upon the over-ruling of the demurrer to the declaration, though the last assigment argued, should be considered first, whether from a chronological, logical or legal order, as we have repeatedly held "where there is no sufficient declaration in a case, and a demurrer should have been sustained thereto, the other questions in the record are not open for the consideration of the appellate court."    City of Orlando v. Heard, 29 Fla. 581, 11 South. Rep. 182; South Florida Tel. Co. v. Maloney, 34 Fla. 338, 16 South. Rep. 280; Florida Cent. & P. R. Co. v. Ashmore, 43 Fla. 272, 32 South. Rep. 832; Royal Phosphate Co. v. Van Ness, 53 Fla. 135, 43 South. Rep. 916; Kirton v. Atlantic Coast Line R. Co., 57 Fla. 79, 49 South. Rep 1024. If we should reach the conclusion that this error is well assigned, we would be precluded from going any further.

The first count of the declaration is as follows:

"Sherman Holliday, of Polk County, Florida, the plaintiff, by his attorneys, Dickenson & Dickenson, sues Atlantic Coast Line Railroad Company, a corporation under the laws of the State of Virginia, the defendant, which has been summoned to answer the plaintiff in a civil action, for that, Whereas, to-wit, on or about the 6th day of December, A. D. 1914, the defendant was a corporation under the laws of the State of Virginia, the defendant, which has been summoned to answer the plaintiff in a civil action, for that, Whereas, to-wit, on or about the 6th day of December, A. D. 1914, the defendant was

a corporation under the laws of the State of Virginia, owning and operating a line of railroad as a common carrier, its cars being propelled by means of steam, with a line of tracks extending from the City of Lakeland, in Polk County, Florida, to the City of Tampa, in Hillsborough County, Florida, and having an agent, or other representatives in the said City of Tampa, Hillsborough County, Florida, the said defendant doing business in the State of Florida as a common carrier as aforesaid, and maintaining in or adjacent to the city of Lakeland aforesaid, a certain line of tracks, side tracks and switching tracks, or railroad yards for the purpose of switching and transferring trains and cars, and making up trains, etc., and maintaining in the said yards and between and adjacent to said tracks a large number of artificial lights, to-wit, about fifty (50), such lights, and the said plaintiff on the date and time aforesaid was in the employ of the said defendant for the purpose, and in the duty of looking after and caring for the said artificial lights, and seeing that said lights were kept burning, and the lamps thereof properly filled in the day time and in the night time, and it became and was the duty of the defendant to move and operate its engines and trains in the said yards and upon the said tracks with reasonable and proper care and caution so as to avoid running into and injuring the plaintiff while engaged in his said employment, without negligence on his part, and to furnish the plaintiff a safe and suitable place to work while so engaged in his said employment as aforesaid, yet the said defendant, disregarded its duty as aforesaid, did, on or about the said 6th day of December, A. D. 1914, so carelessly and negligently run and operate a certain train composed of an engine and certain freight cars thereto attached and with such utter and reckless disregard of the safety of the

plaintiff who was then and there, with all due care and caution, and without fault on his part, engaged in the performance of his duty in the care of said lamps as aforesaid; that the plaintiff was struck with great force and violence by the said train or by some article projecting therefrom, and the **plaintiff was** thereby thrown with great force and violence to the ground and was knocked down and badly cut and bruised, maimed and lacerated and received divers breaks, wounds, bruises, contusions on his body, whereby the right fore arm of the plaintiff and wrist of the plaintiff was broken and the bones of the plaintiff's right arm and wrist were broken, whereby the said right arm and right hand of the plaintiff has become and is almost totally useless to him for the balance of his natural life,·which the plaintiff could not reasonably expect would be less than seventeen years, and the plaintiff thereby temporarily lost his eye sight and the plaintiff was thereby forced to expend a large sum of money, to-wit, about One Hundred Dollars ($100.00), in and about endeavoring to be cured of his said injuries, for doctor's bills, medicines, etc., which the plaintiff alleges as special damages in this behalf by him sustained, and the plaintiff has lost divers large sums of money on account of loss of time and inability to labor at his occupation as aforesaid on account of the said injuries so received as aforesaid, and has ever since suffered great pain and anguish and mental suffering whereby the plaintiff was confined to his bed for a period of about three weeks and confined to his home for a long period of time thereafter and has been ever since deprived of his earnings as a common laborer at which he could have earned about Thirty-five Dollars ($35.00), per month, all on account of the carelessness of the defendant as above set forth,

"WHEREFORE, the plaintiff brings this suit and claims

damages against the defendant in the sum of Three Thousand Dollars ($3,000.00)."

The second count differs from the first in that it alleges that the defendant "at about 6 o'clock in the night so carelessly and negligently run and operate a certain train composed of an engine and certain freight cars thereto attached through the darkness, with a certain heavy bar, or rod, or other article, the further description of which is to the plaintiff unknown, projecting out from the side of said train with utter disregard of the safety of the plaintiff who was then and there, with all due care and caution, and without fault on his part, proceeding along the side of said track on which said train was being drawn and operated, and at a safe and convenient distance from said train engaged in the performance of his duty in the care of said lamps aforesaid, whereby the plaintiff was struck with great force and violence by the said bar, rod or article projecting from said train as aforesaid."

The demurrer was interposed to the declaration as an entirety and to each count thereof and a number of "substantial matters of law intended to be argued" were stated. We have examined all the grounds of the demurrer which the plaintiff has urged before us, restricting our investigation to those grounds that are argued and treating the other grounds as having been abandoned, in line with our holding in Moore v. Lanier, 52 Fla. 353, 42 South. Rep. 462; Jacksonville Electric Co. v. Schmetzer, 53 Fla. 370, 43 South. Rep. 85; Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318. The grounds so argued are that the declaration "showed that the plaintiff knew of the danger incident to his employment and failed to show that he exercised care therein, or want of care on the part of the defendant in the operation

of its business;" that the declaration "failed to allege or show the article projecting from the train was so projecting through any defect in construction or appliance of said train, or that the condition of said train was not in the usual condition of ordinary trains of like description;" that the declaration "failed to show that the defendant knew of the projection of any instrument from said train or that by the exercise of reasonable care and diligence it could have known of the existence of said instrument." It is further urged that the first count of the declaration is demurrable "because it alleges that the plaintiff was struck by the train or by something projecting therefrom," and that the second count is demurrable "because it failed to show that the defect or projection was not an obvious one, the risk of which plaintiff assumed."

We do not think that this assignment calls for any extended discussion. We have repeatedly held "In actions for negligent injuries it may be necessary to allege only the relations between the parties out of which the duty to avoid negligence arises, and the act or omission that proximately caused the injury, coupled with a statement that such act or omission was negligently done or omitted." Ingram-Dekle Lumber Co. v. Geiger, 71 Fla. 390, 71 South. Rep. 552, wherein prior decisions of this court are cited. It is true, as we also held therein, "A declaration should contain sufficient allegations of all the facts that are necessary to state a cause of action. As a general rule, only ultimate facts need be alleged." We think that the declaration sufficiently measures up to these requirements. See also the discussion in Morris v. Florida Cent. & P. R. Co., 43 Fla. 10, 29 South. Rep. 541; Tampa & Jacksonville R. Co. v. Crawford, 67 Fla. 77, 64 South. Rep. 437; Logan Coal & Supply Co. v. Hasty,

68 Fla. 539, 67 South. Rep. 72.  In fine, we do not think that either count of the declaration was open to the attack made by the demurrer.  We would add that we have examined Grover v. New York, S. & W. R. Co., 76 N. J. L. 237, 69 Atl. Rep. 1082, the only authority cited to us by the defendant to support this assignment, and are of the opinion that it is not in point and, therefore, fails to sustain the defendant's contention.  Some of the matters of which the defendant seeks to avail itself by way of demurrer would have to be set up by way of plea, as they do not sufficiently appear on the face of the declaration to render the same demurrable.

After the overruling of the demurrer, the defendant filed the following pleas :

"1st.  That it is not guilty.

"And for a second plea to each count of said declaration, defendant says that plaintiff at the time in said declaration set out, when the alleged injury was sustained, the plaintiff was an employe of the defendant engaged in a hazardous employment, and that the plaintiff knew of the hazards attendant upon his said employment, and knew of the dangers to be apprehended in the course of his employment from passing trains; and defendant further says that the said plaintiff at the time aforesaid, failed to exercise ordinary and reasonable care to avoid injury to himself, resulting from the dangers aforesaid, and failed to keep a proper lookout to avoid being·struck by a passing train; and defendant further says that by such failure to observe a duty imposed upon him, the said plaintiff was guilty of contributory negligence directly contributing to his injury, which the defendant is ready to verify.

"And for a third plea to each count of said declaration, defendant says that at the time of the injury to the

plaintiff, in said declaration mentioned, the plaintiff was an employe of the defendant engaged in a hazardous undertaking, that the plaintiff voluntarily accepted the employment and assumed all the ordinary and usual risks and perils incident to the same; that the defendant knew, or by the exercise of reasonable care and attention should have known, of the. dangers incident to his employment, of being injured by moving trains, that the injury to the plaintiff complained of was due to the ordinary and usual risk and peril incident to his employment in which the said plaintiff was engaged, and was not caused and did not result from any negligence or want of care of the defendant, but resulted wholly from the failure of the plaintiff to exercise ordinary and reasonable care to avoid injury to himself."

The plaintiff joined issue upon all these pleas and the case was submitted to a jury with the result as above stated.

As we have previously said, numerous errors are assigned, 59 in all, but quite a number of them must be treated as abandoned for the reason that they are not argued. We have examined all of the assignments which have been urged before us, but, in view of the conclusion which we have reached, it becomes unnecessary to discuss them in detail. Of such assignments, the 2nd to the 7th inclusive, the 11th and the 12th to the 16th inclusive, are all argued together and are based upon the sustaining of certain objections interposed by the plaintiff to questions propounded by the defendant to the plaintiff on his cross-examination. All of these questions, as is stated by the defendant in its brief, were designed to elicit information as to whether or not the plaintiff after his injury made a report thereof to the defendant, directly or indirectly for a period of more than two weeks. We do not see the ma-

teriality or relevancy of the testimony so sought to be elicited from the plaintiff, since he was not required by law to make any report of his injury to the defendant within any specified time.    It is contended that this testimony would have tended to affect the credibility of the witness. We have several times had occasion to discuss the rules which should govern the trial court in exercising its discretion in allowing or disallowing inquiries upon cross-examination into collateral matters to affect the credibility of a witness.    See Wallace v. State, 41 Fla. 547, 26. South. Rep. 713, wherein we held that "Inquiry into collateral matters should not be permitted unless there is reason to believe it may tend to promote the ends of justice and it seems essential to the true estimation of the witness' testimony by the jury."    In Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318, we held: "The evidence adduced in an action should be confined to the issues, and a witness cannot be cross-examined as to any fact which is collateral or irrelevant to the issue merely for the purpose of contradicting him by other evidence if he should deny it, thereby to discredit his testimony."    In Hartford Fire Insurance Co. v. Brown, 60 Fla. 83, 53 South. Rep. 838, we held: "No error is committed by the trial court in refusing to permit a witness, on his cross-examination, to answer a question which is not in cross of any matters elicited on the direct examination and when the answer thereto, whichever way it might be, would not tend to prove the issues as made by the pleadings."    We must hold that these assignments have not been sustained.

The 24th to the 28th assignments inclusive and the 32nd to the 35th assignments inclusive are all argued together and are based upon the sustaining of the plaintiff's objections to certain questions propounded to G.

Daniels and J. A. Moore, two witnesses introduced by the defendant in its behalf. Suffice it to say that these questions, as is stated by the defendant in its brief, were along the same lines on the direct examination of these witnesses as the questions propounded to the plaintiff on his cross-examination to which objections were sustained, and the assignments based on such rulings we have just discussed above. We think that the objections to these questions were properly sustained, as they sought to elicit testimony as to immaterial matters which did not tend to prove the issues made by the pleadings. As we have frequently ruled, objections are properly sustained to questions which seek to elicit testimony outside of the issues in an action. Atlantic Coast Line R. Co. v. Crosby, *supra.*

These are the only assignments argued which are based upon the admission or exclusion of evidence. Assignments 48, 49, 50 and 52 are based upon instructions given at the request of the plaintiff, assignment 57 is based upon a paragraph of the charge given by the trial court of its own motion, and assignments 53 to 56 inclusive are based upon the refusal of instructions requested by the defendant. We have examined all these assignments, but shall not discuss them. It may be that technical error was committed either in the giving or refusal of some of these requested instructions. Even so, if such errors could not reasonably have been prejudicial to the defendant, they would not be sufficient to work a reversal of the judgment. See Southern Express Co. v. Williamson, 66 Fla. 286, 63 South. Rep. 433, L. R. A. 1916 C, 1208.

We feel that it is our duty to call attention to the fact that this case was tried in part upon an erroneous or immaterial issue. Both of the parties litigant ignored

Chapter 6521 of the Laws of Florida (Acts of 1913, Vol. 1, 383), proceeded as though it had never been enacted. or had no applicability and failed to bring it to the attention of the trial judge, by whom it was also evidently overlooked. If such Chapter is applicable and controlling, it is our duty to take judicial cognizance of it. Of course, as we have held, if judgment has been entered upon a · verdict recovered upon an immaterial issue, the appellate court should reverse it.   See Evans v. Kloeppel, 72 Fla. 267, 73 South. Rep. 180, and prior decisions of this court there cited.   Such, however, is not the case here.   Notwithstanding that there was one such immaterial or irrelevant issue, the case was also tried upon other issues which were material and valid, and we are of the opinion that such immaterial issue should not work a reversal of the judgment, as such immaterial issue was brought about by the third plea filed by the defendant, which we have copied above, upon which plaintiff joined issue, and we do not believe that the rights of the defendant were thereby prejudiced.   In other words we think that the rights of the parties litigant could be and were determined upon the other issues which were submitted to the jury.

We recently have had occasion to consider and construe Chapter 6521 and copied it in full in Gulf, Florida & Alabama Ry. Co. v. King, decided here at the present term and to which opinion we now refer, without repeating what we said there.   We think that it necessarily follows from our reasoning and holding in this cited case that such Chapter 6521 is alike applicable and controlling in the instant case.   We construed the term "engaged in * * railroading" as used in this Chapter and reached the conclusion that it was sufficiently comprehensive to apply to the employer's liability to its employees in "the

work of hoisting piles with a steam crane to be used in constructing a railroad wharf." We must likewise hold here that the term is sufficiently comprehensive to apply to the liability of a railroad company to an employee whose duty it was under the terms of his employment to care for and look after a large number of artificial lights, to-wit, about 50, situated in the yards and between and adjacent to the tracks of such railroad company, and to see that such lights were kept burning and the lamps thereof properly filled in the day time and in the night time, as the declaration alleges. That the work which the plaintiff was employed to perform was "a hazardous occupation" is not disputed. This being true, section 4 of such Chapter 6521 applies, which provides as follows: "That the doctrine of assumption of risk shall not obtain in any case arising under the provisions of this Act, where the injury or death was attributable to the negligence of the employer, his agents or servants." Therefore, the defense attempted to be set up in the third plea was not permissible.

It could not successfully be contended that the plaintiff, who was employed to care for the artificial lights, as we have just said, and the conductor and engineer, whose duty it was to operate defendant's train of cars, were "jointly engaged in performing the act causing the injury." This being true, even if the plaintiff and such conductor and engineer could be said to be fellow servants, which would not seem to be the case, such fact would not preclude the plaintiff from recovering damages for personal injuries inflicted on him through the negligence of the defendant, and even if the proofs adduced established the fact that the plaintiff's own negligence contributed in part to such injury. See Section 3 of Chapter 6521. The defendant had the benefit of his sec-

ond plea in which it set up the contributory negligence of the plaintiff and of the proofs adduced thereunder, and instructions were also given to the jury as to the effect of the contributory negligence of the plaintiff, if established, upon the measure of damages. We shall not undertake to discuss the evidence. Undoubtedly it is conflicting upon certain material points, but such conflicts were settled by the jury. We are of the opinion that the evidence is ample to establish the liability of the defendant to the plaintiff for the injuries inflicted upon him. The jury so found and the trial judge concurred therein by overruling the motion for a new trial, some of the grounds of which question the sufficiency of the evidence. See Florida East Coast Ry. Co. v. Pierce, 65 Fla. 131, 136, 61 South. Rep. 237, and Tampa & Jacksonville Ry. Co. v. Crawford, 67 Fla. 77, 64 South. Rep. 437.

We have now disposed of all the errors assigned and argued, including the 58th, though we have not mentioned it by number, which is based upon the overruling of the motion for a new trial, with the exception of the ground of such motion that the damages awarded are excessive. The testimony as to the nature and extent of the injuries inflicted is also conflicting, the medical experts introduced by the respective parties widely differing. Here again it was the province of the jury to settle these conflicts. See Pensacola Electric Co. v. Bissett, 59 Fla. 360, 52 South. Rep. 367. We are not prepared to declare that the amount of $3,000.00 is so excessive as to shock our judicial conscience.

No reversible errors having been made to appear to us, the judgment must be affirmed.

BROWNE, C. J., and TAYLOR, WHITFIELD and ELLIS, JJ., concur.