ATLANTIC COAST LINE RAILROAD COMPANY, *Plaintiff in Error*, v. L. B. SHOUSE, *Defendant in Error*.

Opinion Filed February 2, 1922.

1.  The purpose of a hypothetical question and the reason for its allowance is to obtain the opinion of an expert witness as to probabilities under a given case, the facts of which recited in the question are supposed to be established. The case submitted in the question must consist of such facts only as the evidence proves or fairly tends to prove or that accord with a reasonable theory of the effect of the evidence.

2.  A hypothetical question should not be framed in such way as to require or permit the witness to draw conclusions of fact from the evidence or to exercise his judgment as to the weight which should be given the testimony of other witnesses. Nor is the question permissible whenever the subject matter of the inquiry is of such character that it may be presumed to lie within the common experience of men of common education moving in ordinary walks of life.

3. The answer of an expert witness to a hypothetical question must be given upon the basis of the facts stated in the question and without recourse to other facts within his own knowledge.

4. When objection is made to the admission of evidence, the grounds of the objection should be specific and when the objection is based upon and confined to particular grounds no other grounds of objection will ordinarily be considered.

5. Where improper testimony is given in answer to a proper question the remedy is by motion to strike.

6. Where an objection to a question propounded to a witness is erroneously sustained, but the witness answers notwithstanding the court's ruling and the answer is not stricken from the record, the error is rendered harmless.

7. Where the information as to whether a light from a railroad locomotive operated as a switch engine in a railroad yard at night would shine upon a car moving in a certain direction upon the same track as that on which the engine was moving is material, a witness who is familiar with the location of the yard tracks may testify from his experience of such matters whether such would be the case.

8. When the subject of inquiry is whether the plaintiff's conduct upon the occasion of the accident was prudent or incautious it is not permissible for a witness to give his opinion upon the question.

9. Where evidence is erroneously excluded but afterwards permitted to be given the error may be rendered harmless.

10. When a statement is made by a person to a transaction sufficiently long after the event to exclude the idea that the statement was made under its influence and as a part of the transaction, but on the other hand appears to be a mere narration of a past transaction, the statement is not admissible in evidence as part of the *res gestae.*

11. Where objection to a question propounded to a witness is sustained, the party against whom the ruling is made should make a proffer of the proposed testimony in order that the court may be enabled to decide upon its competency.

12. An instruction to the jury which announces a correct principle of law but is amenable to some criticism in the matter of the construction of the sentences, is not rendered misleading and harmfully erroneous because of such defect, where the meaning the court intended to convey is reasonably clear.

13. Chapter 6521, Laws of 1913, narrowed the fellow servant doctrine and reduced its scope from the common employment in which the injured employee may be engaged to the act causing the injury. Under that act a corporation engaged in the hazardous occupation named in the act is liable in all cases of injury to its employees caused by the negligence of a fellow servant except where the injured employee was jointly engaged with his negligent fellow servant in performing the act causing the injury and is himself guilty of negligence.

14. When an instruction announces an erroneous proposition of law, but when considered in connection with other instructions upon the subject the entire charge upon the point is free from error and removes the error contained in the first instruction the error is not sufficiently harmful to cause a reversal.

15. A requested instruction not applicable to the case is properly refused.

16. A requested instruction presenting a proposition of law already covered by the court in other instructions is properly refused.

17. An instruction requested by the defendant which correctly announces a proposition of law applicable to the case and in harmony with the theory of the defense and which is not adequately covered by other instructions given by the court should be given, and its refusal is error.

BROWNE, C. J., AND WHITFIELD AND WEST, J. J., concur except as herein stated:

1. Under Sections 4971-3, Revised General Statutes of 1920, where a plaintiff employee of a railroad company who was engaged in railroading was not "jointly engaged in performing the act causing the injury" to the plaintiff, he may upon a *Prima facie* showing of negligence of the company as alleged, recover "damages for injuries inflicted upon" him, unless the defendant company shall make it appear that its employees exercised all ordinary and reasonable care and diligence to avoid the injury. If the plaintiff was also negligent the damages otherwise recoverable for the injury should be appropriately reduced.

2. The doctrine of assumption of risk does not obtain in actions under Sections 4971-3, Revised General Statutes of 1920, for negligent injuries to employees engaged in certain hazardous occupations.

3. A plea of contributory negligence is not a plea in bar but in reduction of damages, in actions for negligent injuries by railroad companies.

4. In an action against a railroad company for negligent injuries, a plea that the injuries were caused solely by the plaintiff's own negligence is immaterial as that may be shown under the general issue.

5. Where liability appears and no harmful errors are shown and in view of plaintiff's contributory negligence, the award of damages is excessive, in an action against a railroad company for negligent injuries in running a train, a remittitur may be permitted as an alternative to granting a new trial.

A Writ of Error to the Circuit Court for Alachua County; B. A. Thrasher, Judge.

Affirmed if remittitur is entered for $7,000.00.

*R. A. Burford* and *Robt. E. Davis,* for Plaintiff in Error;

*W. S. Broome* and *A. H.* and *Roswell King,* for Defendant in Error.

ELLIS, J.—The defendant in error who was the plaintiff in the action in the Circuit Court was injured on April 5th, 1920, in the yards of the Atlantic Coast Line Railroad Company at High Springs, Florida, through the negligence so it is alleged of an employee, a locomotive engineer, in the reckless and careless manner in which he discharged his duties as such employee, which at the time of the injury consisted of shifting cars from one track to another. The plaintiff was an employee of the company, about fifty-eight years of age, had been furnished with employment by the company for many years in different positions in the operation of trains, and at the time of the injury was employed as "caller of engineers and firemen" when directed by other agents and employees of the company to do so. The duties of this position seemed to be that of a messenger, who when directed to do so would search in the town or among the shops and houses of the company for a particular engineer or fireman scheduled to go on duty at a certain hour, and remind him of his duty, or inform him of the "call."

The injury occurred so it is alleged about nine o'clock at night, the plaintiff had been directed to "call" a certain engineer. He was discharging that duty, that is to say he was going upon or returning from that errand and was in the act of crossing the tracks of the company a little westward of the depot when he was run down by a "car" which was being switched from one track to another by the method known as "shunting" or the "flying

switch,'' an exceptionally dangerous method, particularly to persons walking close by or standing upon any one of the several tracks near. At the point where the accident happened, the shifting of cars by the method employed at the time the injury occurred was very unusual. According to the testimony of some witnesses that method had not been employed at the particular place in many years. The reason given was that the particular place was one where there was more than the usual passing to and fro of employees and other persons in the yards of the defendant company.

The plaintiff was injured in April, 1920, the car struck him in the right side of his body and knocked him down. The injuries which he actually sustained seem to have been serious and painful. Several ribs were broken, and other internal derangements caused. It incapacitated him from work of any kind, and according to the testimony of a physician witness he would never recover. At the time of the injury the plaitniff was earning about one hundred and eight dollars per month, was fifty-eight years old, and according to his statement was in ''good normal health.''

According to plaintiff's theory the injury occurred in the following manner: The plaintiff was crossing the track at the point in defendant's yard mentioned, about ten minutes past nine o'clock at night. A switch engine came toward him at high speed. At the place where he was standing there were several railroad tracks running parallel to each other and some connected by ''switches.'' The plaintiff stood where he was waiting until he could decide which track the engine would take, before proceeding upon his errand. The engine passed, but a car which was being switched by the engine by the method known as ''snatching'' was switched to the track upon which the plaintiff

6—Vol. 83.

was standing. There were no lights upon the car, the noise of the passing engine drowned the noise of the approaching car, no signal of its approach was given, a man on the front of the switch engine saw the plaintiff but gave him no warning, and before the plaintiff moved away from the track upon which the approaching car came it ran upon him. There was a verdict and judgment for the plaintiff in the sum of fifteen thousand dollars. The defendant railroad company seeks to reverse that judgment here upon writ of error.

The assignments of error argued by counsel for plaintiff in error may be grouped in four classes: The admission and rejection of evidence; the giving and refusing of instructions to the jury; the insufficiency of the evidence to support the verdict, and the excessiveness of the verdict.

Dr. M. H. DePass, a physician called by the plaintiff was asked by plaintiff's counsel the following question: ''The testimony is that this man was injured in a railroad collision in April, 1920, and that he was crushed and injured in and through his chest and back, and that he remained in bed from those injuries for a number of weeks, practically totally disabled for six weeks. He testified or admitted that some twenty years ago some question had arisen about his having some affection of the lungs, tuberculosis, by some physician of the Atlantic Coast Line, but that he never did have any consumption or affection in the lung; that he had a gravel or stone in his kidney or bladder some years ago. Taking that all in connection with the question as to the injuries, that he testified a number of his ribs had been broken at that time, and the resulting disabilities, to what, in your opinion, would the condition which you discovered be attributable?'' Counsel for the defendant objected to the question upon the grounds:

that the question did not state a hypothetical case applicable to the testimony; that the ''question assumes a condition which is only partial in its statement of the facts;'' that the question is ''based upon what the witness says, and not based upon competent testimony;'' that the question is not ''based upon an admitted fact, but only upon the testimony'' of the plaintiff. At the time Dr. DePass was called only the plaintiff and his wife and one other witness had testified as witnesses in his behalf. Dr. DePass had testified that he had ''examined'' the plaintiff recently. ''His general condition was very bad. He was emaciated, thin and weak, temperature 100½, pulse 100, pulse went up to 120 after the slightest exercise. I found a marked tenderness on pressure along the spine; more marked on the left side the lower portion; marked curvature of the spine; practically complete consolidation of the left lung, with a marked retraction and contraction of the left chest, making such a difference in the two sides of the chest that the right side was apparently deformed, more so than just the lateral curvature would have given.''

His reply to the hypothetical question was as follows: ''If this man whom I examined was a perfectly well man to all intents and purposes, able to do his work of labor, or whatever it might be, up to the time that he was injured, if he received a severe injury of the chest, thorax and spine, which was immediately and continuously followed by bad health, confinement to bed and hospital treatment, without any intermissions or remissions, then I would naturally, as a physician, conclude that his present condition was very like and most probably a result of the injury. From my examination of him I conclude that he will never get well. From the conditions I have mentioned it is impossible for that lung to recover.''

The purpose of a hypothetical or supposititious question and the only reason for its allowance is to obtain the opinion of an expert ·witness as to probabilities under a given case, the facts of which recited in the question are supposed to be established. The case submitted in the question must consist of such facts only as the evidence proves or fairly tends to prove, or that accord with a reasonable theory of the effect of the evidence. See Baker v. State, 30 Fla. 41, 11 South. Rep. 492. The question should not be framed in such way as to require or permit the witness to draw conclusions of fact from the evidence in the case or to exercise his judgment as to the weight which should be given to the testimony of other witnesses. Nor is the question permissible whenever the subject matter of the injury is of such a character that it may be presumed to lie within the common experience of all men of common education moving in ordinary walks of life. In such cases the opinions of experts are inadmissible as the jury is supposed in all such matters to be entirely 'competent to draw the necessary inferences from the facts testified to by the witnesses. It is only admissible when the facts to be determined are obscure and can only be made clear by and through the opinions of persons skilled in relation to the subject matter of the inquiry. See 'Rodgers on Expert Testimony, pp. 60-85; State v. Musgrave, 43 West Va. 672, 28 S. E. Rep. 813; 17 Cyc. 242; 5 Ency. Ev., 615.

The fact which counsel sought to ascertain by the hypothetical question was whether the plaintiff's physical condition at the time he was examined by Dr. DePass was caused by the accident which occurred to the plaintiff in the month of April previous. The accident occurred on April 5, 1920. The witness testified in January, 1921, and said that he *recently* examined the plaintiff, whose condi-

tion was described by the witness. The witness did not answer the question as propounded, but proceeded to state such a case as neither the evidence tended to establish, nor such a case as was assumed in the hypothetical question. The witness' answer was based upon the following suppositions: That at the time of the accident the plaintiff was a *"perfectly well* man, to all intents and purposes able to do his work or labor, or whatever it might be'' that the plaintiff received a severe injury of the chest, thorax and spine, which was immediately and continuously followed by bad health, confinement to bed and hospital treatment, without any intermissions or remissions.'' The character of the injury which the plaintiff sustained was the matter in dispute. An attempt was made to show by the expert witness that the plaintiff's condition at the time he was examined by the expert was the direct result of the injuries received in the accident. The witness could not answer the question as propounded, but said he would have to "answer it in his own way.'' That way was to assume that the plaintiff at the time of the accident was a "perfectly well man,'' which phrase was modified by two qualifications, which were very indefinite if not meaningless. Just what idea is conveyed by the words "perfectly well to all intents and purposes'' is exceedingly difficult if not impossible to grasp, and when further qualified by the phrase "able to do his work of labor or whatever it might be,'' the thought in the mind of the witness is not made much clearer. The question did not include any such hypothesis. While the evidence showed that the plaintiff at the time of the accident was performing his work of messenger or "caller of engineers,'' it did not show that he was a perfectly well man; on the other hand the question propounded assumes that "some question had arisen'' as to whether the plaintiff was affected by tuberculosis of

the lungs, which question had been raised many years before by a physician in the service of the defendant company, and while it was assumed that the plaintiff "never did have consumption or affection in the lung," the question was so framed that considering the condition in which the expert found the plaintiff's lungs there existed an unavoidable conflict between the assumption that there was no affection of the lung and the diagnosis of the company's physician many years ago. The expert several months after the accident found the plaintiff's left lung in a state of "practically complete consolidation." The car struck the plaintiff in "the right side." Many years before a physician said the plaintiff had "consumption." The plaintiff's application for membership in the Relief Department many years before was rejected because it was thought by the physician that the plaintiff had "lung trouble." The doubt raised by the hypothetical question as to the "consolidation" of the plaintiff's left lung, was resolved by the expert witness by the assumption, which neither the evidence showed nor the question contained, that the plaintiff at the time of the accident was a "perfectly well man," that is to say had never been affected by any disease that may have produced a "consolidation of the left lung." His deduction therefore was that the accident most probably produced the consolidation of the plaintiff's lung. To reach this conclusion it was necessary as he said to answer the question in his own way, which he proceeded to do by drawing certain conclusions of fact from the evidence referred to in the question. First that the plaintiff being a "perfectly well man, to all intents and purposes, able to do his work of labor or whatever it might be;" second, that he received a "severe injury of the chest, thorax and spine," a fact not assumed in the question, but possibly suggested by the statement that the

plaintiff's chest and back were injured, and that "he testified" that a number of his ribs were broken; third, that the injury was "immediately and continuously followed by bad health, confinement to bed and hospital treatment without any intermissions or remissions." This assumption was contradictory of the fact assumed in the question, which was that the plaintiff "remained in bed from these injuries for a number of weeks, practically totally disabled for six weeks." The witness based his answer upon the condition in which he found the plaintiff probably several months afterwards, and the assumption not contained in the question that at the time of the accident he was affected by no disease which may have caused the condition in which the witness found him. The hypothetical case constructed by the witness was not such an one as could have properly been submitted to him, because it was not one which the evidence proved or fairly tended to prove, or that accorded with a reasonable theory of the effect of the evidence.

The answer of an expert witness to a hypothetical question must be given upon the basis of the facts stated in the question and without recourse to other facts within his own knowledge. See Fuller v. City of Jackson, 92 Mich. 197, 52 N. W. Rep. 1075; City of Wichita v. Coggshall, 3 Kan. App. 540, 43 Pac. Rep. 842; Link v. Sheldon, 136 N. Y. 1, 32 N. E. Rep. 696; Burns' Ex'r. v. Barenfield, 84 Ind. 43. But the witness in this case not only declined to answer the question upon the basis of the facts stated, but had recourse not to facts within his own knowledge, but to an imaginary case of his own construction built in part from some of the facts embraced in the question, his deductions from conflicting evidence referred to in the question and in part from his imagination, and a case which had no basis

whatever in the record. The question as propounded was objectionable because it inferentially required of the witness to determine whether the diagnosis by the defendant's physician of the plaintiff's physical condition many years ago was correct, in view of the plaintiff's assertion that he never had "consumption or affection in the lung." This was exclusively within the province of the jury, but no objection was made to the question upon that ground. The objections were that the question did not state in full the case applicable to the testimony, that it assumed a condition which was "only partial in its statement of facts, that it was based upon what the witness said and not upon competent testimony and that it was not based upon an admitted fact, but only upon the testimony of the plaintiff. Neither one of these objections were well taken, and they were properly overruled.

It is true that the facts recited in the question were not admitted, but it is not correct to say that it did not state a case applicable to the evidence which was then before the court, the case hypothesized in the question might be said to be one which accorded with a reasonable theory of the effect of the evidence although it did contain a defect which if it had been urged might have prevented the question being put to the witness and prevented what was no doubt a misleading answer and a hindrance rather than an aid to justice.

The rule which obtains in this State as to objections to the admission of evidence, is that the grounds of the objection must be specific and when objection is based upon and confined to particular grounds no other grounds of objection will ordinarily be considered. Again, where improper testimony is given in answer to a proper question, the remedy is by motion to strike. See Carter v. Bennett,

4 Fla. 283; Sullivan v. Richardson, 33 Fla. 1, 14 South. Rep. 692; Hoodless v. Jernigan, 46 Fla. 213, 35 South. Rep. 656; Thomas v. Williamson, 51 Fla. 332, 40 South. Rep. 831; McKinnon v. Johnson, 57 Fla. 120, 48 South. Rep. 910; Sims v. State; 54 Fla. 100, 44 South. Rep. 737; Jacksonville, T. & K. W. Ry. Co. v. Peninsular Land, Transp. & Mfg. Co., 27 Fla. 1, 9 South. Rep. 661; Lakeside Press & Photo Engraving Co. v. Campbell, 39 Fla. 523, 22 South. Rep. 878; Jacksonville Electric Co. v. Sloan, 52 Fla. 257, 42 South. Rep. 516; Wilson v. Jernigan, 57 Fla. 277, 49 South. Rep. 44; Atlanta & St. A. B. R. Co. v. Kelly, 77 Fla. 479, 82 South. Rep. 57; Morey v. State, 72 Fla. 45, 72 South. Rep. 490.

No motion was made to strike the answer of the witness, but defendant's counsel proceeded to cross-examine him. He was asked if the plaintiff had lung trouble as a matter of fact but not sufficiently advanced for him to be fully cognizant of it, would that fact affect the witness' opinion as to the cause of the plaintiff's lung condition? Objection was interposed to this question upon the ground that there was no testimony that the plaintiff had "lung trouble before the accident." The objection was sustained and the ruling made the basis of the fourth assignment of error. The ruling was erroneous because, there was both in the evidence and the hypothetical question references to a physician's statement testified to by the plaintiff, that he had "consumption" and that he was rejected as a member of the "Relief Department on account of lung trouble."

The question was most pertinent and clearly within the rights of the defendant. The opinion of an expert is valuable only so far as it rests upon a given condition, the facts are assumed to be true. It is perfectly proper to ask

if the opinion of the witness would be the same if the facts were materially different. The witness, however, proceeded to answer the question by saying that if the plaintiff "had a latent tubercular deposit within his lungs that was giving him no trouble" and he was subjected to a "severe injury as described," then the witness would be of the opinion that the injury "was very largely a factor" in the plaintiff's condition. The error in sustaining the objection to the question was cured by the witness who proceeded to answer it notwithstanding the objection.

The first, second, fifth and seventh assignments of error are abandoned.

E. J. Bryson, a witness called for the defendant, was switch engine foreman and on duty when the plaintiff received his accident. This witness threw the swith when the car was shifted. He testified that the engine which was pulling the car had a headlight on each end. The engine passed over the switch into what was called the cut off. Immediately after its passage the switch was thrown so that the car following might be diverted toward another track referred to by the witness as track three. The witness stated that his attention was concenrated upon the switch so that he migh throw it at the proper time after the engine passed so as to divert the car which was following, and he could not say whether at that time one of the headlights of the engine was shining on the car, because his attention was concentrated at the switch. He was asked the following question: "Independent of that, from your knowledge of the track, and knowledge of the effect, would the headlight of the engine be obliged to be shining on the car?" The plaintiff's counsel objected to the question upon the ground that the witness had answered that he

did not know whether the headlight of the engine was on the car or not. The court sustained this objection and refused to permit the question to be answered, to which ruling exception was duly taken, and constitutes the basis of the sixth assignment of error.

The witness had testified that the engine was backing toward the east with a car attached to the front end of the engine on which there was a headlight. Two maps had been introduced in evidence showing the location of the switches at the point where the plaintiff was injured and these maps showed that the track lying between switch H and switches D and E ran in a straight line for the distance of approximately one hundred feet. The purpose of the question was to elicit information as to whether the headlight on the front end of the engine as it backed into the loop would necessarily shine upon the car which was following.

There was a plea averring that the plaintiff was familiar with the railroad yards, and familiar with the various tracks thereon and the movements and operations of cars from one track to another as circumstances might require, and that he carelessly and negligently attempted to pass over and cross one of the tracks in the railroad yard immediately in front of an approaching car which was in full view of the plaintiff. Upon this plea of contributory negligence the plaintiff presumably joined issue. The record does not disclose whether issue was joined upon that plea, but the presumption is that issue was joined upon it as the parties went to trial, which they could have done upon a joinder of issue. See Carlton-Moore Co. v. Vanderipe, 80 Fla. 512, 86 South. Rep. 346. It is perfectly evident that if the plaintiff had stepped off the track to avoid the engine and then stepped back upon the track in front of an

approaching car which was in full view of him, he was guilty of contributory negligence. It was important therefore to know whether the light from the engine was shining upon the approaching car.

The plaintiff had testified that the car had no lights on it and that no warning or signal of any kind was given, that he saw the engine approaching and that he stopped to see where it was going; whether it was coming on the track he was on, or whether it was going into the cut-off or one of the other tracks, and when he discovered that the engine was not coming on the track on which he was standing he stood there for a few moments and was struck by the car which was following the engine. Between this testimony and the testimony of the witness Bryson, there was an irreconcilable conflict because if after the car passed, the body of the plaintiff was seen at the point where the witness Bryson, who threw the switch saw it, that is to say about twenty feet west of that switch, the plaintiff must have been struck at a point at least seventy feet further west after he had stepped upon the track over which the engine had passed and upon which the car was following because, if as he said, he was standing upon a track watching the approaching engine and was not hit by the engine, he could not possibly have been hit by the following car unless he stepped upon the track on which the engine passed, because at the point where he was struck the car followed upon the same track on which the engine passed. According to the testimony of the witness Bryson, therefore, the plaintiff must have stepped upon the track on which the engine passed, and almost immediately after it had passed. If the light from the engine shone upon the approaching car so that it was in full view of the plaintiff his act in stepping upon the track

in front of the approaching car was contributory negli·
gence, and he would have no right to recover.  It was,
therefore, of the highest degree of importance to know
whether a headlight upon the front end of the engine,
which was backing eastward, shone upon the approach-
ing car which was following it, or whether in view of the
location of the tracks at that point a headlight on the
front of the engine would necessarily have been thrown
upon the approaching car.

The witness was an employee of the defendant corpora-
tion, was on duty at the time of the accident, as flagman
and switch foreman, was familiar with the yards and loca-
tion of the tracks, and was competent to testify whether
a headlight on the front of the engine would be thrown
upon an approaching car under the circumstances.  It was
shown that he had such special knowledge concerning the
location of the tracks as to qualify him to testify as an
expert upon the question of whether a headlight located
upon the front of an engine backing eastward would be
thrown upon a car following the engine upon the same
track.  The question was not excluded by the court in the
exercise of a discretion as to whether the witness had or
had not shown such special knowledge of the circum-
stances as to qualify him to testify as an expert, and under
the circumstances we are not able to say that he did not
have the requisite experience to answer the question.  See
Florala Saw Mill Co. v. Smith, 55 Fla. 447, 46 South. Rep.
332; Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43
South. Rep. 318.  We are of the opinion that the exclusion
of the question was error.

The eighth and ninth assignments of error rest upon the
court's ruling sustaining objections to questions pro-
pounded by defendant's counsel to the witness G. W.

Kelley, as follows: "Please state, from your experience with Mr. Shouse, what had been his actions and demeanor with respect to crossing these tracks." "Will you please state whether or not prior to the time of the accident, when you have observed Mr. Shouse crossing the tracks, that he acted and conducted himself as a careful and prudent man, or whether or not he has shown that he was cautious and prudent and was regardful of the danger of shifting cars and moving locomotives or cars?" It is argued in support of these assignments that it was proper to show by the witness whether the plaintiff was or was not customarily careful and prudent in crossing the tracks of the defendant company in its yards. The questions sought to elicit the opinion of the witness as to whether certain conduct of the plaintiff on other ocasions was careless or negligent under circumstances existing when such conduct was observed. The question in issue was whether the plaintiff's conduct upon the occasion when he was injured was careless and negligent, which was a matter exclusively for the jury to determine, and not such a matter as it was proper to receive expert testimony upon. Whether the plaintiff had been careless upon other occasions was not material, though it may have been proper to show specific acts which the defendant's counsel may have deemed to constitute negligence in order to show the plaintiff's customary disregard of the perils of his situation, but it was not competent for the witness to testify that in his opinion the plaintiff had been careless upon other occasions. Whether the plaintiff was negligent upon the occasion when he was injured was a matter to be determined by the jury from all the circumstances, and it was not competent for a witness to give his opinion upon the precise fact which was in issue before the jury, for to permit that would put the expert in the place of the jury and

to invade their peculiar province. See 11 R. C. L. p. 583. There may exist circumstances under which a witness would be permitted to testify to the ultimate conclusion, and the rule laid down here is not intended to cover such cases, but in a case where the point to be determined may be as accurately decided by the jury as by an expert, and where no technical or scientific knowledge is necessary in order to arrive at a conclusion based upon given facts, a witness will not be permitted to express his opinion as to the ultimate conclusion which is peculiarly within the province of the jury to determine. We think that there was no merit in these two assignments

This witness testified that he was operating the switch engine and made the flying switch in which operation the plaintiff sustained his injury. He testified that headlights were burning on both ends of the engine, one on the rear and one on the head. That the headlight on the front of the locomotive would have shone on the back of the box car at any point as it followed the engine between certain switches, and that it did shine on the car all the way from where it was cut off between switches G and E to where the engine passed into the cut-off, and that any person standing on the side of the track could have seen the car following the engine. The testimony of this witness was the very information that was sought to be elicited by the question propounded to the witness Bryson, and which question and ruling thereon was made the basis of the sixth assignment of error. While we think there was error in the court's ruling upon the question propounded to the witness Bryson, we think that the error was rendered harmless by the subsequent testimony of the witness Kelley, which was received without objection. See Chapter 6223, Laws of Florida, 1911, Sec. 2812, Revised General Statutes, 1920.

Robert Williams, a witness called in behalf of the defendant, testified that he was switching in the yard the night that the plaintiff was injured; that he helped to make the flying switch, and that he uncoupled the car from the engine. He stated how it was intended to make the switch substantially as the witness Bryson had stated it. After uncoupling the car he jumped up and caught it again at the rear end and went upon the top to apply the brakes if necessary.. When the car stopped he came down and went to the engine and heard there that the plaintiff had been hurt. Mr. Bryson called him and he went to where Mr. Shouse, the plaintiff, was laying on the ground. The witness was asked if he heard the plaintiff say anything about how the accident happened. To this question plaintiff's counsel objected, and the court sustained the objection. That ruling constitutes the basis of the tenth assignment of error.

Mose Smiley, a witness for the defendant, testified that he was a switchman working in the yards of the defendant company the night that the plaintiff was injured, and that at the time of the injury he was at the switch at No. 3 track. He saw the car in the headlight of the engine and. stood at his switch waiting for the car to arrive at No. 3 track. It stopped before it came to the track and the witness went up to where the plaintiff was injured. Both Mr. Bryson and Mr. Kelley were there supporting the plaintiff, who was on his feet. The witness was asked if Mr. Shouse made any statement at that time in the witness' hearing. His reply was "yes." Then followed the question: "As to how the accident occurred?" Objection to this question was interposed by counsel for the plaintiff, and the objection was sustained. The witness was then asked if Mr. Shouse made any statement as to a desire to continue the performance of his duties that night. Objection to

that question was interposed by plaintiff's counsel, and the objections sustaining these two rulings constitute the bases of the twelfth and thirteenth assignmnets of error.

It is contended that any statement made by Mr. Shouse at that time immediately after the accident occurred and before he had moved away from the spot where he was lying after having been struck by the engine constituted a part of the *"res gestae"* and was evidence original in its character. There is no merit in these assignments because it affirmatively appears from the record that whatever statements the plaintiff may have made under these circumstances, it was sufficiently long after the transaction as not to include the idea that they were not made under its influence. It does not appear from the record that his statements were made simultaneously with the injury, or that they occurred so quickly afterward as to exclude the presumption that they were the result of thought or design. See Lambright v. State, 34 Fla. 564, 16 South. Rep. 582. In that case this court speaking through Mr. Justice Mabry said that the tendency of the courts seems to be in favor of applying the liberal rule upon the subject of what constitutes the *res gestae;* and said, however, that each case must of course depend upon its facts, and the trial court must exercise a sound discretion in determining whether the facts bring the offered evidence within the rule. No error is made to appear in this ruling of the court, who under the circumstances, deemed that the statement made by the plaintiff to the witnesses Smiley and Williams was a mere narration of a past transaction, without sufficient connecting circumstances to characterize it as a spontaneous utterance or necessary incident of the transaction. If the statement made by the plaintiff at that time had been, as intimated

in counsel's brief, of an explanatory character and in the nature of an admission, it would have been admissible on a different ground. See Coons v. Pritchard, 69 Fla. 362, 68 South. Rep. 225. The proper course to pursue when evi-- dence of the character sought by these questions is offered, is to make a proffer of the proposed testimony in order that the court may decide upon its competency. See Morey v. State, 72 Fla. 45, 72 South. Rep. 490; Boykin v. State, 40 Fla. 484, 24 South. Rep. 141.

J. A. Watson was called as a witness in behalf of the defendant and testified that he was the general yard master of the Seaboard Air Line Railway Company at Jackson- ville, and had been in that position for about ten months, before which time he was general yard master of the Jack- sonville Terminal Company, and before that served in the same capacity with the St. Johns River Terminal Com- pany. That he knew what a flying switch was and had seen cars switched in that manner. He was asked the fol- lowing question: "State from your knowledge and expe- rience, whether or not it was customary to make flying switches in the yards of the Seaboard Air Line, Jackson- ville Terminal Company and St. Johns Terminal Company during the period of time that you mentioned you have been working in these several capacities." Objection to this question was sustained. He was then asked the fol- lowing question: "Are you acquainted with the usual and customary method of railroad companies in the mat- ter of making up trains in their yards, with making up of trains, the shifting of cars in the yards, from one track to another, and if so, state what that custom is." Objection to that question was sustained, and the two rulings con- stitute the bases of the fourteenth and fifteenth assign- ments of error. The record discloses that counsel stated

to the court that the purpose of the first question was to show that it was a usual and customary method of railroad companies generally to make flying switches in the yards of such companies in shifting cars and making up trains.  The first question limited the witness to the custom prevailing in the yards of the Seaboard Air Line, Jacksonville Terminal Company, and St. Johns Terminal Company, whom the witness served in the capacity of yard master at Jacksonville.  How the custom prevailed at Jacksonville in the yards of those companies might indicate the usual and customary method of railroad companies generally in shifting cars and making up trains it is difficult to perceive, but if the witness had given the answer indicated, the evidence would have been irrelevant and the answer merely argumentative. The purpose of the proffered evidence was to show that the method of switching cars which the defendant company used in this case was a usual and ordinary method used by railroad companies, and therefore prudent, cautious and free from any element of negligence.  The soundness of the reasoning is not apparent, because a dangerous method of doing a thing is not rendered devoid of danger by frequent practice, and besides negligence depends upon the circumstances under which an act is performed.  The declaration is not framed on the theory that a flying switch is *per se* a dangerous method of switching cars.  While each one of the counts alleges that the defendant was shifting a car by a method known as the flying switch, it alleges that the method was accompanied by carelessness and negligence in other ways. The first count alleges that no warning or signal was given of the approach of the car; the second count, that the same act of negligence accompanied the method used, and the third count alleges that the car was allowed to run by reason of the ''momentum and speed'' it had attained,

alone and without reasonable or adequate means of control, and without any light, signal or warning of any kind. While the declaration was attacked by demurrer and the demurrer was overruled and the ruling made the basis of the first assignment of error, that assignment was abandoned.

There was no error in the rulings made the basis of these assignments, because the issue presented was whether the defendant was guilty of negligence in making the switch under the circumstances alleged in the declaration and whether the plaintiff was guilty of contributory negligence. Whether it was the custom of railroad companies in making up trains and shifting cars to use the method known as the flying switch was therefore of no relevancy whatsoever, because the plaintiff was confined to the case made by his declaration, which was that the flying switch was made in a negligent and careless manner, and not that the making of the flying switch was *per se* negligence on the part of the defendant.

The twenty-second assignment of error attacks the first charge given by the court upon the plaintiff's request. It is contended by counsel for plaintiff in error that certain language in the charge assumed negligence in the act of detaching the car, and that the jury could have gotten no other idea from the language of the instruction. We do not believe that the instruction given is obnoxious to the criticism made. It is true that the language might have been a little clearer, but it cannot be said that it was so involved as to mislead the jury. The court instructed the jury that if they believed from the evidence that the plaintiff in the discharge of his duties was crossing a track of the defendant and that while doing so "he was struck by a certain car of the defendant that had been carelessly and

negligently detached from the engine that was pulling it, and upon which car there was no light, and that there was no warning or signal of its approach, and that by reason of such carelessness, and negligence he was injured,'' they should find for the plaintiff. It is contended that that language was equivalent to a statement by the court that the car had been negligently detached from the engine and that therefore the plaintiff was entitled to recover.

We do not consider such to be the effect of the language. Juries are supposed to give to the words used in a charge their ordinary and usual meaning. They are not supposed to measure the language of the court by those rules of grammar by which purity of diction, elegance of speech and clearness of expression are tested, nor are they expected to parse every sentence in order to ascertain the exact relation of one word to another and draw from the language used the delicate distinctions which such analysis might develop, but they are supposed in a liberal and broad way to apply the language used to the case which they are considering, and the evidence offered in support of it. If they did this, they must have necessarily understood the court to mean that if the evidence showed that the car was negligently detached from the engine and that there was upon it no light and no warning or signal of its approach was given, that in such case the plaintiff was entitled to recover. That was the case presented by the first count of the declaration. The parties went to trial upon the issue tendered by the plea of not guilty and upon the issue of contributory negligence presented by the other plea. These were the questions which the evidence was offered to support and to refute, and it is reasonable to suppose that the jury so understood the case, and so understanding it, they could not have supposed that the court

had found the fact of negligence for them, and was direct-
ing them to return a verdict for the plaintiff.

The charges numbered two and three are made the basis
of the twenty-third and twenty-fourth assignments of
error; and are attacked upon the same ground as that upon
which the first charge was attacked. It is also argued that
these charges were deficient in that they adopted the plain-
tiff's theory of what constituted negligence on the defend-
ant's part as averred in the declaration. This argument
is not very clear; nor can we perceive any merit in it. The
case was tried upon the theory that the acts alleged in the
declaration constituted negligence on the defendant's part.
The defendant conceded that the declaration was sufficient,
because after assigning as error the court's order in over-
ruling the demurrer to the declaration which attacked its
sufficiency, it abandons that assignment in this court, and
we are not prepared to say that the declaration wholly
failed to state a cause of action.

The court gave the following charge: "A railroad cor-
poration is liable in damages for injuries inflicted upon
its employee, the plaintiff, caused by the negligence of the
defendant, its agents and servants, as alleged in the decla-
ration, unless the defendant shall make it appear that the
defendant, its agents and servants have exercised all ordi-
nary and reasonable care and diligence, the presumption
in all cases being against the defendant." The giving of
this charge was made the basis of the twenty-fifth and
twenty-sixth assignments of error. This charge was given
under the authority of Section 2, Chapter 6521, Laws of
Florida, 1913, Sec. 4972, Revised General Statutes, 1920,
the language of which was modified in the charge to apply
to the case being tried. The purpose of the Act and its
effect was to narrow the fellow servant doctrine and re-

duce its scope from the common employment in which the injured employee may be engaged, to the act causing the injury, thus making the corporation engaged in the hazardous occupations mentioned in the first section of the Act liable in all cases of injury to its employees caused by the negligence of a fellow servant except where the injured employee is *jointly* engaged with his negligent fellow servant in performing the act causing the injury and is himself guilty of negligence. The case made by the declaration is controlled by the Act referred to, because the declaration alleges that the plaintiff was an employee of the defendant company, and that he was injured by the negligent act of the defendant's employees who at the time were operating a certain switch engine. The declaration shows upon its face that the plaintiff and the employees operating the switch engine were *not jointly* engaged in performing the act causing the injury. In such case before the plaintiff could recover it was necessary that he should not only allege in his declaration facts showing negligence on the part of the defendant, its agents or employees, but also to prove facts showing at least *prima facie* negligence as alleged. See Atlantic Coast Line R. Co. v. Gardner, 77 Fla. 305, 81 South. Rep. 473; Charlotte Harbor & N. Ry. Co. v. Truette, 81 Fla. 152, 87 South. Rep. 427; Gulf, F. & A. R. Co. v. King, 73 Fla. 325, 74 South. Rep. 475; Atlantic Coast Line R. Co. v. Holliday, 73 Fla. 269, 74 South. Rep. 479.

The charge given contains two defects: First, it seems to assume that the plaintiff's injuries were the result of negligence on the part of the defendant as alleged in the declaration, and dispenses with proof on the part of the plaintiff of any acts on the part of the defendant or its agents showing or tending to show at least a *prima facie* case of negligence; second, the charge asserts that the pre-

sumption in all cases is against the defendant, thereby intimating that notwithstanding whatever evidence there might be in the case tending to show that the defendant exercised all ordinary and reasonable care and diligence, the presumption would outweigh such points and would require greater or stronger or more convincing proof than any other question at issue. See Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318. But the charges of the court should be considered as a whole in determining their correctness, and even though one instruction announces a patently erroneous proposition of law, if such error was entirely removed when other charges upon the subject are considered in connection with it, the assignment of error based upon the erroneous charge would fail. See Atlantic Coast Line Ry. Co. v. Crosby, *supra;* Charlotte Harbor & N. Ry. Co. v. Truette, *supra;* Cross v. Aby. 55 Fla. 311, 45 South. Rep. 820.

At the request of the defendant's counsel the court instructed the jury that "railroad companies are not responsible for accidental injuries not resulting from their own negligence, and when an accident occurs, which is not caused by failure to exercise all ordinary and reasonable care on the part of the defendant, its agents or servants, then no liability exists." The court also instructed the jury that an "employee, in the performance of his duties, is bound to exercise ordinary care for his own safety, or that degree of care which prudent persons usually exercise under similar circumstances; and if he is injured solely by failure of himself to exercise such care, the railroad company is not liable, and you should find the defendant not guilty." In the first, second and third charges given by the court at the plaintiff's request the court definitely instructed the jury that if they believed from the evidence

that the defendant was struck by a car that had been carelessly and negligently detached from the engine, and upon which car there was no light, and there was no warning nor signal of its approach given, and that it was running alone, without reasonable or adequate means of controlling it, they should find for the plaintiff.  These instructions considered together announce the doctrine as applied to this case, that upon the question of negligence the presumption was against the defendant, and that if the jury believed from the evidence that the plaintiff was injured in the manner alleged in his declaration, that is to say, by being struck by a car which was being moved by the method known as the flying switch, and that the car had been carelessly and negligently detached from the engine which was pulling it, and upon which car there was no light, and that there was no warning signal of its approach, they should find for the plaintiff.  But if on the contrary they believed from the evidence that in making the flying switch the defendant, or its agents and servants, exercised all reasonable care and diligence under the circumstances, the jury should find for the defendant; and further, that the plaintiff as an employee of the defendant in the performance of his duties was bound to exercise ordinary care for his own safety, or that degree of care which prudent persons usually exercise under similar circumstances, and that if he was injured solely by failure of himself to exercise such care, the railroad company was not liable, and the jury should find the defendant not guilty.  According to this interpretation of all the charges given upon the subject, the defects contained in the fifth charge were eliminated, and the charge is not amenable to the criticism that the plaintiff was not required to prove any act of negligence on the part of the defendant, and that the presumption of negligence against the defendant

required greater or stronger evidence to overcome it than any other question at issue. We are of the opinion, there-fore, that the twenty-fifth and twenty-sixth assignments of error are not sustained.

Following the order in which the assignments of error are discussed in the brief of counsel for plaintiff in error, we recur now to the sixteenth assignment, which rests upon the refusal of the court to give to the jury a charge upon the doctrine of the assumption of risk. The charge was not applicable to the case, because, as stated above, it was controlled by Chapter 6521, *supra.* See Atlantic Coast Line Ry. Co. v. Holliday, *supra;* Charlotte Harbor & N. Ry. Co. v. Truette, *supra.*

The seventeenth assignment of error rests upon the court's refusal to give a charge embracing the doctrine of the assumption of risk, and undertakes to point out that under the peculiar circumstances under which the accident occurred, the place being in the yards of the railroad com-pany, the defendant was not required to give the same warnings of the movements of trains or cars as it would be required to do at places where the general public have a right to pass, and that employees having knowledge of the manner and method of the movement of cars in the yards of the defendant, would assume the risk of their employment incident to their duties which required them to pass over the tracks of the company in the yard, and to the business of the company which required the use of such tracks.

While it is undoubtedly true that a person incurs a greater risk in undertaking to cross the tracks of a rail-road company in the latter's yards where the business of shifting cars must necessarily be carried on, and should therefore exercise a greater degree of prudence and cau-

tion in crossing the tracks than he might be required to do in crossing where the public has a right to cross, yet it can not be said that under Chapter 6521, Laws of Florida, 1913, *supra*, that an employee whose duties require him to cross the tracks of a railroad company in its yards assumes the risk incident to the company's business of shifting cars when the method employed in doing so is careless and negligent. The doctrine of the assumption of risk was emphasized in the charge, and was, therefore, erroneous. The failure on the part of the plaintiff to exercise the care in crossing the tracks which the circumstances required would be an element in the transaction for consideration by the jury in determining what proportion of negligence the plaintiff contributed to his own injury, and if they found from the evidence that the plaintiff failed to exercise a proper degree of prudence in crossing the tracks, the damages which he would be entitled to recover because of the negligence of the defendant, would be reduced in proportion.

The eighteenth assignment rests upon the court's refusal to give the fifth instruction to the jury requested by the defendant. This instruction in substance advised the jury that while it would constitute negligence on the part of the company to move its detached cars across public streets or highways where the general public have a right to pass, by the process known as shunting or flying switches, without giving due warning, such method does not constitute negligence on the company's part when the movement of cars is made by such methods in the company's yards, and in the latter case the company would not be required to put a light on the car, or a man upon it, to handle such detached cars, or to take such other precautions as would be required in moving the cars across public streets or highways where the traveling public

would be in danger. This instruction was correctly re-fused, because if the declaration stated a cause of action the charge amounted to a denial of the principles of law upon which the cause of action rested. According to the case made by the declaration the very acts of negligence on the part of the defendant of which the plaintiff complained was the omission on defendant's part to place a light upon the shunted car, or a man upon it to handle it and to give any signal or warning of any kind of its movement.

The defendant went to trial upon the plea of not guilty, and the further plea that the plaintiff by his own care-lessness in attempting to pass over the defendant's tracks in front of an approaching car which was in his full view, or which he could have seen or heard by the exercise of the proper care and caution on his part, brought the injury upon himself, or contributed to such injury. The charge was also misleading in view of the evidence in the case, and of very doubtful applicability to the evidence, even if it announced a correct proposition of law, because it is not disputed that the point at which the defendant was injured was a place over which several hundred of the defendant's employees passed to and fro daily. In so far as it was a point of ingress and egress to and from the defendant's shop yards, and was so used with the defend-ant's knowledge, it was to that extent a place where the people who so used it had a right to pass. The charge practically amounted to a direction to the jury to return a verdict for the defendant because it in substance declared that the defendant was without negligence in shifting the car which resulted in the plaintiff's injury. See Atlanta & St. A. B. R. Co. v. Kelley, 77 Fla. 479, 82 South. Rep 57; Stinson v. State, 76 Fla. 421, 80 South. Rep. 506; Clark v. United Grocery Co., 69 Fla. 624, 68 South. Rep 766. We are not prepared to say that the declaration

wholly failed to state a cause of action, and that under its allegations a case for damages for personal injuries could not be made. If the defendant desired to question the sufficiency of the declaration it should have done so by demurrer, or if counsel considered that the declaration wholly failed to state a cause of action they should have raised the point by a motion in arrest of judgment. Without definitely deciding the point, we think that the sufficiency of a declaration in point of law cannot be tested after issue joined and evidence submitted to the jury by request for an instruction to the jury which controverts the principle of law upon which the declaration rested.

The court was requested by defendant's counsel to instruct the jury that as a matter of law a railroad track is, of itself, a warning of danger, and that it is the duty of a person, before crossing the same, to look and listen for approaching engines or cars, to ascertain whether or not any were coming upon the railroad track, before attempting to cross the same, and that it is negligence not to do so. That if the jury believed from the evidence that the plaintiff attempted to cross the track without looking, and that by so looking he could have observed the approaching car in time to have avoided the accident, that such failure to look was the proximate cause of the accident, and the jury should find for the defendant. There was no error in the refusal to grant this charge, because it was in substance covered by a charge given to the jury at the defendant's request, to the effect that the plaintiff was bound to exercise ordinary care for his own safety, or that degree of care which prudent persons usually exercise under similar circumstances, and that if the plaintiff was injured solely by his failure to exercise such care, the defendant would not be liable. The requested charge was

also bad because it was inapplicable to the evidence. The plaintiff testified that he saw the engine approaching and remained standing upon the track in order to see whether it was coming upon the track on which he stood, or upon another, and that he waited until it passed. No one testified that he failed to look or listen for an approaching car, nor was there any such issue in the case.

The seventh charge requested by the defendant and refused by the court was as follows: ''The court further charges you that if you believe from the evidence, that the detached car could have been observed by the plaintiff as it was approaching the place where he attempted to cross over the track, either by a light in the yard or from the headlight of the engine, or otherwise, by looking in the direction from which such car was coming, that he failed to so look in that direction, and heedlessly attempted to cross the track immediately in front of such moving car, and that such attempt to cross the track was the proximate cause of the accident, he is not entitled to recover, and you should find the defendant not guilty.'' The refusal to give this charge is the basis of the twentieth assignment of error.

The charge definitely and clearly stated the defendant's case of contributory negligence on the plaintiff's part as averred in the second plea. It was applicable to the evidence and covered by no other instruction given by the court. The plea averred that the plaintiff with full knowledge that cars might be expected to be found moving over the tracks in the railroad yards, recklessly, carelessly and negligently attempted to pass over and across one of the tracks in the said yard immediately in front of an approaching and moving car in full view of the plaintiff, or which he could have heard or observed by the exercise

of proper care and caution upon his part, thus rendering the accident inevitable because of the plaintiff's attempt to cross in front of the car at a point so near to it as to render the accident unavoidable. That the plaintiff knew that the defendant was shifting cars is shown by his own testimony, in which he stated that as he walked on the track "and got on the frog" on the first rail he saw the switch engine coming at high speed, which he said was an unusual thing, because a "running switch was never made there;" that he stopped "right on the frog" to see where the switch engine was going, and then he discovered that it was not coming on the track on which he stood, that he stood still. There was evidence on behalf of the defendant tending to show that if the plaintiff had remained standing upon the track on which he stood when the engine passed, that he would not have been struck by the car which was following. One of the witnesses testified, and Exhibit B clearly shows, that the car which was being switched passed over the same track on which the engine passed until the car reached the cut-off, which was at the switch lettered H on the plan marked Exhibit B, a point about twenty feet east from where the plaintiff was first seen lying upon the ground. If the plaintiff had been standing upon a track west of the point where he was found lying upon the ground, upon which the engine did not pass, the plaintiff would not have been injured by the following car if he had remained standing upon that track. So there is evidence tending to show that after the engine passed, which he knew was approaching, that he stepped upon the track over which it had passed, and was struck by the car. There was also evidence tending to show that the headlight from the engine shone full upon that car, that a man was upon it with a lantern, and that it was in full view of the plaintiff, or could have easily been seen

by him if he had looked in that direction before attempting to cross that track on which the engine had passed.

The refusal to give this charge was a refusal to submit the defendant's case to the jury as it had been made by the second plea and supported by evidence offered in its behalf. The refusal to give this charge was more than prejudicial error; it was the denial of a fair trial to the defendant; it was a refusal to submit its side of the case to the jury for consideration; it was a denial of the equal protection of the laws. It needs no citation of authority to support the proposition that the defendant's case, as made by its second plea, which was a valid one and supported by evidence, should have been submitted to the jury. The averred carelessness of the plaintiff in attempting to cross the track under the circumstances, was the defendant's principal defense. Evidence was offered in support of it. The defense found its justification in the testimony of numerous witnesses, the blue prints showing the location and plan of the yards, and the tracks and switches of the defendant company, and in a large part in the testimony of the plaintiff himself. In behalf of the defendant in error it is contended that the charge was not warranted by the evidence. In this regard the plaintiff's counsel is mistaken. It is contended by the defendant in error that the charge would tend to give the jury a wrong impression of the law applicable to the case, that is to say, "overlooking the precautions and care required of defendant in running its trains over a crossing used by the general public." The answer to that criticism is that the plea expressly set up the defense of contributory negligence by the plaintiff which was the proximate cause of his injury, and upon that plea the plaintiff took issue and went to trial. See Seaboard Air Line Ry. Co. v. Tomberlin, 70 Fla. 435, 70 South. Rep. 437; Western Coal & Mining Co.

v. Burns, 84 Ark. 74, 104 S. W. Rep. 535; Missouri, K. &
T. Ry. Co. of Texas v. Mason, 44 Texas Civ. App. 627,
99 S. W. Rep. 186; New York, P. & N. R. Co. v. Wilson's
Adm'r. 109 Va. 754, 64 S. E. Rep. 1060; Southern Cotton
Oil Co. v. Caleb, 143 Ga. 585,85 S. E. Rep. 707.

The remaining assignment of error rests upon the re-
fusal of the court to grant the motion for a new trial. The
first ground of which was that the verdict of the jury was
against the evidence and without sufficient evidence to
support it, and the second ground discussed was that the
verdict of the jury was excessive in amount.

While there was perhaps sufficient evidence to justify
the jury in finding that the defendant was not without
negligence in shifting the car which resulted in the plain-
tiff's injury, yet the evidence is almost convincing beyond
the point of controversy that the plaintiff was also negli-
gent, if not solely responsible for the injury which he sus-
tained, and although we would not, upon the first ground
of the motion for new trial, set aside the verdict, we would,
if there were not other errors in the case, hold that the
verdict was excessive. Mr. Justice TAYLOR and the writer
are of opinion that the judgment should be reversed for
the error pointed out. The other members of the court
do not concur on this point.

On December 5, counsel for plaintiff in error moved the
court to order and direct that the judgment of the court
below be set aside and vacated, and the plaintiff's action
in the lower court be dismissed upon the ground that the
defendant in error had departed this life since the suing
out of the writ of error and the filing of the briefs by the
respective parties. The information of the death of the
defendant in error was contained in no other document

submitted by counsel for plaintiff in error except the motion itself, but the fact was confirmed by a letter of one of the counsel for the defendant in error addressed to the clerk of this court under date of Oct. 27, 1921, in which the attorney for the defendant in error referred to a telegram, which he enclosed in his letter, and which he had just received from Mrs. Shouse, the widow of the defendant in error, which telegram was dated, High Springs, Fla., Oct. 28, 1921, and announced the death of Mr. Shouse on that date. The letter from the attorney for the defendant in error contained the following clause: ''But we do not ask to revive the suit, under the circumstances, in view of Rule 16, and only request the court to proceed to a decision, as the widow is destitute and there are a number of children.'' The motion to direct a dismissal of the cause below is denied under Rule 16 for the government of the Supreme Court of Florida.

TAYLOR, J., concurs.

BROWNE, C. J., AND WHITFIELD AND WEST, J. J., concur except as stated herein.

WHITFIELD, J.—An injury caused by the running of a railroad locomotive and car is not controverted. This case appears to come within the purview of the Act of 1913, Section 4973, Revised General Statutes, 1920. While the plaintiff and the persons who operated the engine and car that did the injury, were all employees of the defendant railroad company, yet the plaintiff and such other employees were not ''jointly engaged in performing the act causing the injury,'' therefore upon a *prima facie* showing of negligence as alleged, the plaintiff was entitled to recover ''damages for injuries inflicted upon'' him, unless

the defendant made it appear that its employees exercised all ordinary and reasonable care and diligence to avoid an injury. If the plaintiff was also negligent the damages otherwise recoverable for the injury should be appropriately reduced. See Atlantic Coast Line R. Co. v. Holliday, 73 Fla. 269, 74 South. Rep. 479; Gulf, F. & A. R. Co. v. King, 73 Fla. 325, 74 South. Rep. 475; Atlantic Coast Line R. Co. v. Gardner, 77 Fla. 305, 81 South. Rep. 473; Louisville & N. R. Co. v. Norton, 75 Fla. 597, 78 South. Rep. 982; Seaboard Air Line Ry. v. Tilghman, 237 U. S. 499, 35 Sup. Ct. Rep. 653. If liability appears and the damages awarded are excessive, a remittitur may be permitted. Florida Ry. & Nav. Co. v. Webster, 25 Fla. 394, 5 South. Rep. 714; Florida East Coast R. Co. v. Hayes, 67 Fla. 101, 64 South. Rep. 504; Florida East Coast R. Co. v. Schumacher, 63 Fla. 137, 57 South. Rep. 603; Saunders Transfer Co. v. Underwood, 77 Fla. 167, 81 South. Rep. 105; Postal Telegraph-Cable Co. v. Scott, 76 Fla. 336, 79 South. Rep. 767; Atlantic Coast Line R. Co. v. Conant, 79 Fla. 668, 84 South. Rep. 688; Atlantic Coast Line R. Co. v. Pitkin, 64 Fla. 24, 59 South. Rep. 564; Tampa Electric Co. v. Gaffga, 81 Fla. 268, 87 South. Rep. 922; Luce v. Lee, 79 Fla. 693, 84 South. Rep. 726; Lindsey Turpentine Co. v. Souls, 81 Fla. 339, 87 South. Rep. 782; Seaboard Air Line Ry. Co. v. Prewitt, 81 Fla. 423, 88 South. Rep. 160.

If the second plea on which the requested seventh charge was predicated, sought to tender an issue of assumed risk, it was forbidden by the statute, (Sec. 4, Chap. 6521, Acts of 1913, Sec. 4974, Rev. Gen. Stats. 1920), and if it tendered an issue of contributory negligence, it was not a plea in bar, but in reduction of recoverable damages.

The plea avers that with full knowledge of the stated

dangerous conditions surrounding him, the plaintiff by stated negligence "caused or contributed to the injuries sustained."

A plea that the injury was caused solely by the plaintiff's own negligence is immaterial as that may be shown under the general issue. Louisville & N. R. Co. v. Yarborough, 61 Fla. 307, text 308, 54 South. Rep. 462; Seaboard Air Line Ry. v. Rentz & Little, 60 Fla. 449, 54 South Rep. 20; A. C. L. Ry. v. Crosby, 53 Fla. 400, 43 South. Rep. 318.

If the refused requested charge No. 7 on the legal effect of plaintiff's asserted negligence. if proven, is correct as matter of law and was not fairly covered by charge No. 3 or other charges given, the evidence as to the plaintiff's negligence was not a proper predicate for the charge as framed; and even if it was error to refuse the charge, it was not necessarily harmful since there was affirmative evidence of negligence on the part of the defendant that proximately contributed to the injury, which under the statute warranted a recovery even though negligence of the plaintiff required the damages to be reduced in proportion as the plaintiff was negligent.

The errors pointed out go more to the damages than to the liability, and were not fundamental or necessarily harmful to the defendant. Conceding negligence by the plaintiff that appreciably and proximately contributed to his injury, yet as the plaintiff was not jointly engaged with other employees in operating the train, and as the defendant's negligence as alleged and consequent liability in damages appeared *prima facie* and was not clearly negatived by the evidence, a proper disposition appears to be a privilege of remittitur.

It is, upon consideration, ordered and adjudged that if the plaintiff shall within thirty days enter a remittitur of $7,000.00 the judgment shall stand affirmed for the remainder, $8,000.00.

Otherwise the judgment shall stand reversed.

It is so ordered.

BROWNE, C. J., AND WEST, J., concur.