222 So.2d 754 (1969)
NATIONWIDE MUTUAL INSURANCE COMPANY, an Ohio Corporation, Appellant,
v.
Helyne GRIFFIN, As Administratrix of the Estate of Sabina M. Foster, Deceased, and John J. Foster, Appellees.
Nos. 1017, 1597.
District Court of Appeal of Florida. Fourth District.
May 23, 1969.
*755 P. Dalton Kennedy, Jr., West Hollywood, for appellant.
Norman C. Roettger, Jr., of Fleming, O'Bryan & Fleming, Fort Lauderdale, for appellees.
OWEN, Judge.
Nationwide's automobile liability policy provided for payment of certain medical expenses and disability and death benefits to any person suffering injury or death by reason of an accident arising out of the use of the automobile. Sixty-eight year old Sabina Foster was a passenger in the automobile at the time it was involved in an accident on February 17, 1963. She was immediately admitted to the hospital and 24 days later, while still a patient, she sustained a cerebral thrombosis which required her continued hospitalization until March 18, 1963. Thereafter she appeared to be recovering from the effects of the stroke although the extent of her activities was in dispute. On February 2, 1964, approximately 350 days after the accident, Mrs. Foster died, the immediate cause of which was cerebral thrombosis having its onset approximately 48 hours prior thereto.
When Nationwide denied liability for the $5,000 death benefit this suit resulted. At trial plaintiff's expert medical witness, Dr. Monyek, expressed the opinion, in response to a hypothetical question, that there was a causal relationship between the automobile accident and Mrs. Foster's death. Defendant's objection to the hypothetical, on the grounds that it was based upon facts which were not in evidence, was overruled. On cross examination the witness admitted that his opinion was based partly on the assumption that the cerebral thrombosis occurring immediately prior to death was in the same general area of the brain as the cerebral thrombosis occurring approximately three weeks following the accident, although there was no direct proof of such. Defendant's counsel then asked the witness whether, in the absence of such an assumption, he could express his opinion with "reasonable medical certainty" to which the witness responded in the negative. Defendant's motion to strike the direct testimony of the expert witness was denied. The court also denied the defendant's request for an instruction to the jury that death is presumed to be the result of natural dissolution rather than of accidental injury. The jury returned a verdict for plaintiff for an amount which included the medical expenses, the disability benefits and the $5,000 death benefit. The court then entered judgment for the amount of the verdict, "together with interest costs and attorney's fees as may be hereafter taxed by the court". Appeal No. 1017 was taken from this judgment. Approximately one year later the court entered its order taxing costs, attorney's fees and interest and appeal No. 1597 is from this order. The appeals were consolidated.
The court properly overruled defendant's objection to the hypothetical question propounded to plaintiff's medical expert. There is competent, substantial evidence in the record tending to prove each of the basic facts set forth in the hypothetical questions.[1] Such basic facts do not need to be proven conclusively before a hypothetical question can be based thereon.
It was not error to deny defendant's motion to strike the opinion testimony of Dr. Monyek. He did not state that absent the assumption that both strokes occurred in the same area of the brain, he could not causally connect the death to the accident. Had he made this admission, the defendant's motion would have been wellfounded. Rather, Dr. Monyek stated that absent such assumption, he could not state his opinion with "reasonable medical certainty". Expert medical opinion as to causal relationship between an accident or occurrence on the one hand and a present or past condition on the other hand does not *756 need to be stated with reasonable certainty. Such testimony is competent if the expert can show that the accident or occurrence could cause such injury or result,[2] or that the accident or occurrence might have or probably did cause the injury or result.[3] The defendant did not elect to inquire of the witness whether, in the absence of such assumed fact, he could express an opinion on the causal connection which would meet one of the foregoing tests, but chose to limit the question to whether the opinion could be expressed with reasonable medical certainty. The admitted inability of the witness to express the opinion with reasonable certainty did not render his testimony incompetent and require it to be stricken. Whether reasonable certainty is required when the opinion relates to a future condition is not decided by us as that question is not before us in this case.
The court properly refused defendant's requested instruction to the effect that death is presumed to be the result of natural dissolution rather than of accidental injury. A presumption is a rule of law which attaches to certain evidentiary facts and is productive of certain procedural consequences. The presumption is not itself evidence and has no probative value. Florida follows generally [albeit not always] what is sometimes called the Thayerian rule to the effect that when credible evidence comes into the case contradicting the basic fact or facts giving rise to the presumption, the presumption vanishes and the issue is determined on the evidence just as though no presumption had ever existed. Conversely, if the basic facts are sufficiently proven so as to give rise to the presumption, and not thereafter contradicted by credible evidence, the party in whose favor the presumption exists becomes entitled to a directed verdict. Thus, in either event, the presumption is productive of these procedural consequences but is not a matter for the jury to consider.[4]
When the court entered its order taxing costs, attorney's fees and interest, the amount of the interest was computed from the date of Mrs. Foster's death rather than from the date of the judgment in favor of the plaintiff. Since this was an action ex contractu it is proper to allow interest at the legal rate from the date the debt was due.[5] While a portion of the debt representing medical expenses and disability benefits may have been due even prior to Mrs. Foster's death, it is clear that in any event the entire debt became due at the time of her death, even though defendant in good faith disputed both the amount and its obligation to pay.
Appellant's remaining points have been considered but we find no reversible error.
The judgments are severally affirmed.
CROSS, J., and HENSLEY, ROBERT E., Associate Judge, concur.
NOTES
[1] Atlantic Coast Line Ry. v. Shouse, 1922, 83 Fla. 156, 91 So. 90; Young v. Pyle, Fla.App. 1962, 145 So.2d 503.
[2] Eli Witt Cigar & Tobacco Co. v. Matatics, Fla. 1951, 55 So.2d 549; Southern States Power Co. v. Clark, 1935, 118 Fla. 521, 159 So. 881; Jacksonville Electric Co. v. Cubbage, 1910, 58 Fla. 287, 51 So. 139; 31 Am.Jur.2d, Expert and Opinion Evidence, § 44; 13 Fla.Jur., Evidence, § 326. But see Depfer v. Walker, 1935, 123 Fla. 862, 169 So. 660.
[3] Potts v. Mulligan, 1940, 141 Fla. 685, 193 So. 767.
[4] Gulle v. Boggs, Fla. 1965, 174 So.2d 26; Leonetti v. Boone, Fla. 1954, 74 So.2d 551; Atlantic Coast Line Ry. v. Voss, 1939, 136 Fla. 32, 186 So. 199; Shaw v. York, Fla.App. 1966, 187 So.2d 397; Greyhound Corp. v. Ford, Fla.App. 1963, 157 So.2d 427.
[5] Parker v. Brinson Construction Co., Fla. 1955, 78 So.2d 873; Sullivan v. McMillan, 1896, 37 Fla. 134, 19 So. 340.