TAMPA ELECTRIC COMPANY, A CORPORATION, *Plaintiff in
Error,* v. JULIEN SOULE, *Defendant in Error.*

Opinion Filed November 18, 1922, On Rehearing.

1. Section 4964 Revised General Statutes which provides that
   a railroad company shall be liable for any damage done to
   persons, stock or other property by the running of the loco-
   motives, or cars or other machinery of such company, or
   for damage done by any person in the employ and service of
   such company, unless the company shall make it appear that
   its agents have exercised all ordinary and reasonable care
   and diligence and that in all cases the presumption shall be
   against the company, applies only in cases where by an act
   of the railroard or its agents in running its locomotives, or
   cars or other machinery, an injury to a person or stock
   occurs.

2. The word "running" as used in that section conveys the idea
   of action, the doing of something by the railroad company
   or its agents. The presumption of negligence is not cast
   upon the company in cases where by no act of the company
   or its agents in running the locomotives, cars or other ma-
   chinery of the company, a person or stock or other property
   is injured on railroad premises.

3. Where a passenger on a street car in attempting to leave the car at a place where the car usually stops for the purpose of allowing passengers to descend from it after the car has come to a full stop, falls and injures herself, the mere fact of the injury does not cast upon the company the presumption that it either caused the injury or that the injury was the result of any negligence upon the part of the company or its agents.

A Writ of Error to the Circuit Court for Hillsborough County; F. M. Robles, Judge.

Judgment reversed.

WHITFIELD dissents.

*Knight, Thompson & Turner,* for Plaintiff in Error.

*Sparkman & Knight,* for Defendant in Error.

WHITFIELD, J.—The declaration herein alleges in one count that the plaintiff, a passenger, was alighting from the defendant's street car, "when the skirt of her dress without fault or negligence on her part caught and became fastened upon a nut or bolt or other part of said car which the said defendant had so negligently permitted to become loose and in a dangerous condition and thereby the plaintiff in stepping from said car in attempting to alight therefrom was jerked, pulled and with great force and violence thrown and fell to and upon the street pavement by means whereof, then and there the plaintiff" was injured as stated; and in another count that the "defendant had stopped said car for the purpose of permitting plaintiff and other passengers to alight therefrom and plaintiff undertook to do so with all due care and diligence when the skirt of her dress without fault or negligence on her part

caught and became fastened upon a nut or bolt or other part of said car which the said defendant had so negligently permitted to become loose and in a dangerous condition and thereby the plaintiff in stepping from said car in attempting to alight therefrom was jerked, pulled and with great force and violence thrown and fell to and upon the street pavement by means whereof, then and there the ·plaintiff was injured as stated; and in another count that the defendant "did not keep said car in good condition and repair but neglected to do so.and negligently allowed the . same to become in an. unsafe condition and permitted certain bolts, irons, seats, and other parts of said car to become loose and in an unsafe and dangerous condition; and plaintiff further avers that said car had reached a point at or near the intersection of Zack and Franklin Streets in said City and defendant had stopped said car for the purpose of permitting plaintiff and other passengers to alight therefrom and plaintiff undertook to do so with all due care and diligence. When in attempting to alight from said car she by reason of said unsafe and dangerous condition of said car and without any fault or negligence on her part, was in some manner to the plaintiff unknown, jerked and thrown with great force and violence to and fell heavily upon the street pavement, by means thereof, then and there the plaintiff's neck, hips, sides, shoulders and back were badly bruised, contused and wounded, etc.''

Trial was had on a plea of not guilty. Verdict and judgment awarding $15,000.00 damages to the plaintiff were rendered and the defendant took writ of error.

The plaintiff testified: ''The car had stopped and I started to alight forward, and in trying to reach the first step I had let go my hold, and when I started to reach the first step I thought I had my footing, you know, and my dress

was caught, taking both my feet from under me, and just threw me right forward. Nothing to catch me then but the pavement. When I started to alight from this car and stepped forward I found that my skirt was caught but it was too late. It caught on something on the car, I believe a nut or a bolt, something on the car." The plaintiff also testified that several days after the injury, she was on the same street car and the conductor called her attention to a loose nut on the same car at a place where it could have caught her dress as she fell.

A witness for the plaintiff testified that the plaintiff sat in front of her on the street car; that both were leaving the car, and that "just as I got up, she got up before I did, and just as I got up she fell. Her skirt caught on something on the car. I couldn't see what it was but I heard it tear and she fell. She fell hard, just went plump right from the first step as you step off. I don't think she fell from the flooring. She fell from the first step as you step from the flooring. As she stepped her skirt caught in this obstruction whatever it was and I heard it tear."

Testimony as to the injuries received and as to the losses sustained was adduced. At the close of the plaintiff's testimony the defendant moved for a directed verdict in its favor. This was denied and is argued as error.

The statutes provide: "A railroad company shall be liable for any damage done to persons, stock or other property, by the running of the locomotives, or cars, or other machinery of such company, or for damage done by any person in the employ and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company.

"No person shall recover damages from a railroad company for injury to himself or his property, where the same is done by his consent, or is caused by his own negligence. If the complainant and the agents of the company are both at fault, the former may recover, but the damages shall be diminished or increased by the jury in proportion to the amount of default attributable to him." Sec. 4964, 4965, Rev. Gen. Stats. 1920.

It is argued that as the street car had stopped and was still when the plaintiff fell as she was alighting from the car, the statutes are not applicable, since they regulate the liability of railroad companies only for damage done by the running of cars, etc., of such company. This is too narrow an interpretation of the statute. It has reference to the liability of railroad companies for damages done in the operation of cars, etc. See 62 S. E. Rep. 1020; 63 .S E. Rep. 1103, text 1107.

Stopping a street car to allow passengers to alight is a part of the running or operation of such cars. The statute was applicable. Proof of injury to a passenger in alighting from a street car was shown and that the injury was caused by the running or operation of the street car may fairly be inferred from the evidence adduced by the plaintiff. Thereupon the statute put upon the defendant company the burden of showing that it exercised all ordinary and reasonable care and diligence to secure the safety of the passenger under the circumstances. This included "all ordinary and reasonable care and diligence" to have the car free from loose or projecting bolts or nuts that could catch dresses of passengers that may pass over them and cause injury in alighting from the car. The plaintiff having shown an injury to herself by the catching of the bottom of her dress on some obstruction as she alighted from the car, there was

no error in refusing to direct a verdict for the defendant at the close of the plaintiff's testimony in chief.

It is contended by the defendant company that the injury was not caused by a loose nut or bolt catching the plaintiff's dress as she alighted from the car; but conflicts in the evidence as to this were settled by the verdict which has sufficient supporting evidence. The defendant's evidence as to inspection of the car and as to there being no loose or protruding bolt or nut at a place where it could have caught the plaintiff's dress as she was alighting from the car, and that the plaintiff's foot caught in her dress and tripped her, does not so clearly overcome the testimony adduced by the plaintiff as to warrant an appellate court to disturb the verdict. See North Chicago St. R. R. Co. v. Eldridge, 51 Ill. App. 430.

In developing the plaintiff's earnings prior to her injury to ascertain the pecuniary loss she sustained by the injury defendant asked her on cross examination if she had reported her income to the Government. Her answer contained a statement that she had not reported her income for taxation because she had a mother and five orphan children to care for. Defendant moved to strike this testimony. The court stated that he would not consider such testimony as prejudicing the jury and denied the motion to strike it. In this action for personal injuries to the plaintiff, testimony as to persons whom she was caring for was not called for by the question, was improper and should have been stricken. But this error, though harmful, goes to the amount of the recovery and not to the defendant's liability.

It is strenuously contended that the charges given to the jury by the court imposed too high a degree of care upon the defendant as a carrier of passengers, particularly as to

the degree of care required in the construction, management and equipment of its cars; but in view of the fact that the defendant is engaged in the public service of carrying passengers in a city and has the complete control of its cars, it cannot justly be said that the highest degree of care and skill which may reasonably be expected of intelligent and prudent persons, is an unreasonable requirement under the circumstances incident to the public use of street cars in a city by ladies as well as by men. The statute requires the exercise of "all ordinary and reasonable care and diligence" demanded by the circumstances under which the public service is being rendered, and the highest degree of care and skill which may reasonably be expected of intelligent and prudent persons, is not inconsistent with the requirements of the statute in view of the nature of the service rendered by street cars in a city while engaged in transporting passengers under circumstances that demand most efficient and careful operation to avoid injury to passengers.

Certainly in this case the charges given could not reasonably have harmed the defendant with reference to the showing as to liability for reasonable compensatory damages. As to the degree of care required of carriers of passengers. See Florida R. Co. v. Dorsey, 59 Fla. 260, 52 South. Rep. 963; Pelot v. Atlantic Coast Line R. Co., 60 Fla. 159, 53 South. Rep. 937. The charges as to the measure of damages were not entirely sufficient as a guide to the jury.

In view of the whole record and upon a consideration of the law applicable to the evidence, justice will be subserved by allowing a remittitur of $5,000.00 to be entered as an alternative for a new trial to determine under appro-

priate evidence and instructions a proper allowance for damages under section 4964 and 4965, Revised General Statutes of 1920.

It is so ordered.

BROWNE, C. J., AND TAYLOR AND WEST, J. J., concur.

ELLIS, J., dissents.

ELLIS, J., Dissenting.—I am unable to agree with the majority in the conclusion reached in this case because it seems to me from the evidence as I have read it that the cause of the plaintiff's injury has not been shown with that degree of clearness which the law requires before it places upon the defendant the burden of compensating the injured person for the damages sustained.

On the 6th of June 1919 Miss Soule, the plaintiff in the court below, became a passenger on one of the cars of the Tampa Electric Co., a street railroad company. The car was bound for the city where Miss Soule wished to alight at or near Franklin and Zack streets. When the car arrived at her destination it stopped and passengers began to alight.

The car was an open one, of the kind usually in use during the summer months and good weather. Passengers entered and alighted from the side, the seats extended crosswise the car its entire length, there was a running board or two upon the side upon which passengers stepped in entering the car or alighting from it.

Miss Soule, who was sitting upon the front seat about three feet from the end, arose from her seat when the car stopped, walked to the side from which she was to alight, undertook to step down upon the first step or running

board, released her hold upon a bar or stanchion which she held for support and fell full length upon the pavement.

She said her skirt or dress caught in something and that tripped her and caused her fall. Her dress was of a light material faced with a material much stronger in texture, and the bottom of the skirt was about four to six inches above the level of the ground or floor when she stood erect. A fellow passenger said that she saw Miss Soule fall, that her dress caught in something on the car and that she heard the dress tear as Miss Soule fell.

Her injuries did not at first seem to be serious. She went about her business with more or less interruptions due to her bruises, employed about five doctors, several nurses, went to a hospital and bought many drugs. Her bills for medical attention, nurses fees, hospital charges and drugs were quite large from all of which she derived little or no benefit. None of the scientific men whom she employed were able to give her much if any relief and none discovered the real injury until about fourteen months after the accident she went to Baltimore, Maryland, to the hospital of Johns Hopkins University and there it was discovered that she had a fracture of the right hip.

Four days after the accident, on June 10th, Miss Soule again boarded a street car in front or near her residence and recognized the conductor as the same one who was in charge of the car from which she fell. She said that the conductor told her that the car she was then about to get on was the same one from which she fell and pointed out to her a bolt running through the floor of the car at the end of the seat which served to hold the seat in place, and which was loose and projected slightly above the floor, whether in front of the seat or under it is not stated. She said the conductor told her that he told the claim

agent "that it must have been that nut that caught" her skirt, that they could not find anything else. She said that the conductor told her that the nut was loose the day she fell from the car. Miss Soule said the loose bolt or nut must have been the thing that caught her skirt. She said "why it was up and was loose and it was like the head of a nail; it was worn out on the corner sharp and would have caught anything that drug over it and in leaning forward to catch hold of that holt to steady myself naturally my skirt would have pulled over that bolt and would have been torn. It could not have been otherwise."

The conductor denied that he had any such conversation with Miss Soule and said that the bolt which Miss Soule found was on a different car from the one from which she fell. The records from the office of the defendant company show that the car which the conductor operated on the 10th was of a different number from that which was borne by the car from which Miss Soule fell. The records also show that car No. 60, the one from which Miss Soule fell on June 6th was on June 10th operated by conductor Gooding and not conductor Mothershed, with whom Miss Soule said she had the conversation on June 10th about the loose bolt.

The declaration which is in three counts alleges in the second count that Miss Soule's skirt "caught and became fastened upon a nut or bolt or other part of said car, which the said defendant had so negligently permitted to become loose," as she attempted to alight from the car and she was thrown to the ground. The other counts merely allege that as she attempted to alight from the car she was jerked and thrown with great force and violence upon the pavement.

There is no evidence whatsoever tending to show that the plaintiff was jerked or thrown to the ground by the running of the car, that is to say, because of any movement or jerking of the car. It was not in motion. It had stopped at the usual place to enable passengers to get off and on the car. Miss Soule's injury was caused by the catching of her skirt upon some object on the car, or by some awkward movement of her own in descending from the car.

Upon the theory that her skirt caught upon some object on the car she brought the action against the defendant eight months after the accident and about five months before she went to Baltimore.

The first proposition contended for by the plaintiff is that having shown the accident and injury the law raises the presumption that the street car company was negligent and that such negligence was the proximate cause of the injury. The majority opinion supports that contention and announces such doctrine but without citation of any authorities. The majority holds that "proof of injury to a passenger in alighting from a street car was shown and that the injury was caused by the *running* or *operation* of the street car may fairly be inferred from the evidence adduced by the plaintiff. Thereupon the statute put upon the defendant company the burden of showing that it exercised all ordinary and reasonable care and diligence to secure the safety of the passenger under the circumstances."

Here the word "operation" is not used as synonymous with the word "running" but conveys a broader meaning. The statute which changed the common law rule as to presumptions in particular cases should be given a strict and not a loose, liberal construction. The statute pro-

vides that a railroad company shall be liable for any damages done to persons, stock or other property by the "running of the locomotives, or cars or other machinery of such company" or for any damages done by any person in the employ and service of such company unless the company shall make it to appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company. See Sec. 4964 Revised General Statutes of Florida 1920.

The word "operation" as used in Farnsworth v. Tampa Electric Co., 62 Fla. 166, 57 South. Rep. 233 and Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318 and Pensacola Electric Co. v. Bissett, 59 Fla. 360, 52 South. Rep. 367 is synonymous with the word "running" as used in the statute. In each case the accident resulted from the *movement* of the defendant's cars or locomotives. In no case before this court has the word "running" as used in the statute been given any other significance.

The statute implies action on the part of the railroad company so that when an injury is sustained by a person as the result of some movement of the car or locomotive the statute raises a presumption of negligence against the company, but no such presumption arises merely because one sustains an injury while a passenger, or while on railroad premises.

The rule announced in the majority opinion makes the injury itself presumptively the result of a negligent act or omission of the carrier, and carries the rule beyond the terms of the statute and the construction which this court has invariably placed upon it. In bringing action against a railroad company for damages for personal injuries the plaintiff must first show that the defendant's act produced or caused the injury. When that fact is shown then

only does the presumption arise against the railroad corporation that the act was a negligent one. See Warfield v. Hepburn, 62 Fla. 409, 57 South. Rep. 618; Atlantic Coast Line R. Co. v. Hillhouse, 64 Fla. 173, 60 South. Rep. 339; Lofton v. Jacksonville Electric Co., 61 Fla. 293, 54 South. Rep. 959; Payne, Director General of Railroads v. McKinnon, 81 Fla. 583, 88 South. Rep. 495; Seaboard Air Line Ry. v. Smith, 53 Fla. 375, 43 South. Rep. 235; Florida East Coast Ry. Co. v. McElroy, 72 Fla. 90, 72 South. Rep. 459; Seaboard Air Line Ry. v. Royal Palm Soap Co., 80 Fla. 800, 86 South. Rep. 835.

In the case of Florida East Coast Ry. Co. v. McElroy, *supra*, which was an action for damages to property caused by fire which was alleged to have been set out by the defendant, Mr. Justice Whitfield, speaking for the court said: "The statutory presumption of negligence does not exist until it is shown with some degree of definiteness that sparks from the engine started the fire. A mere probability that sparks escaped from the engine and started the fire is not sufficient as a legal basis of recovery."

In the case at bar the injury was not definitely, nor with any degree of definiteness, shown to have been caused by a loose bolt or nut on the car from which the plaintiff alighted. The plaintiff said her skirt caught on something on the car. She said: "When I started to alight from this car and stepped forward I found that my skirt was caught but it was too late." Her *supposition* that it was a "nut or bolt" was upon motion stricken from the evidence.

The only evidence offered that it was a loose bolt or nut that caught her dress was her statement that four days later she got on another car near her home, recognized the conductor as the same one who was in charge of the car

from which she fell and she called his attention to a loose bolt on the car which she was then boarding, and said this must have been the nut that caught her skirt. She told the claim agent it must have been that bolt because ''we couldn't find anything else.''

The statement that the injury was caused by the loose ''bolt or nut'' was the merest conjecture, even if the car on which she discovered the loose bolt on June 10th was the same car as the one from which she fell. But the fact was shown to be otherwise. It was shown by the records of the company that the car which the plaintiff boarded on June 10th was not the same one from which she fell four days before. Can it possibly be said with any degree of definiteness that the injury was caused by a ''loose nut or bolt'' catching in the plaintiff's skirt? In order to affirm the judgment the court must take for granted that such was the fact. The liability of the defendant is made to depend upon the merest conjecture, or what is even less in accordance with the rules of law, it is made to rest upon a presumption of negligence arising upon the happening of the accident.

I am mindful of the difficulties under which the plaintiff labored to prove her case. It was said that under the circumstances she could not at the time of the accident examine the car for defects in its construction or to ascertain its state of repair. That the condition of the car was a matter of information wholly within the knowledge of the defendant and the plaintiff could not therefore with certainty specify any particular defect in the construction of the car or fault in its state of repair that caused her injury. But the very argument proves that she failed to establish a *prima facie* case of negligence against the company even if the statute quoted applies.

There is nothing in the evidence tending to prove that the injury was caused by the running or movement of the car. The plaintiff in alighting from the car fell. If her fall was caused by her skirt catching on "something on the car" that something was not shown to be a loose "bolt or nut." The evidence is not conflicting on the point that the loose bolt found by her was on a car different from the one from which she fell. She said the conductor told her it was the same car, but even if the jury believed her statement the conductor's word, which was not binding upon the company as an admission, was definitely refuted by the records of the company.

## On Rehearing.

Per Curiam.—Upon reconsideration of this case the court has concluded that the doctrine announced in the first opinion, in so far as it applies to the presumption of negligence cast by the statute upon railroad companies where injuries have been sustained by persons, stock or other property by the running of the locomotives, cars or other machinery of such railroad companies, was misapplied in this case.

That the word *running* as used in the statute, section 4964 Revised General Statutes 1920, providing that "A railroad company shall be liable for any damage done to persons, stock or other property, by the running of the locomotives, or cars, or other machinery of such company, or for damage done by any person in the employ and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company," is not a word of as broad meaning as the word *operation* and that it conveys the idea

of action, movement, the doing of something. When that activity on the part of the railroad company results in some injury to a person, the presumption of negligence created by the statute attaches to the railroad company.

In a long line of cases in which the construction of the quoted statute was involved, this court has invariably held that the injury or damage sustained by one upon railroad property does not raise the presumption of a negligent act or omission on the part of the company in violation of some duty which it owed to the person injured, but that before the presumption of negligence attaches it must first be shown that the railroad company's act produced the injury before the presumption created by the statute can be invoked.

The act of stopping its cars that passengers may alight at their destination may be included in the language "running of the locomotives, or cars, or other machinery," so that if in the act of stopping its cars it causes an injury to a passenger, or any other person, the presumption that the act was a negligent one could be invoked under the statute.

In the case at bar, Miss Soule was not injured by any act of the defendant or movement of its cars or other machinery, nor is there any claim that the injury was done by any person in the employ and service of the company, nor that the company had failed to provide a safe place for her to alight from the car. The mere fact that she sustained an injury from a fall which occurred while she was alighting from the car after it had come to a stop and there was no movement of any kind of its machinery or cars, does not cast upon the company the burden of showing that the injury did not occur through any negligent act or omission of duty by the company or its employees.

There is no evidence in the record from which it may fairly be inferred that the fall which Miss Soule sustained was caused by any act of the defendant company and it may not be inferred from the mere fact of her fall that it was caused by the company.

Miss Soule's statement that a few days later when boarding another car that the conductor told her it was the same car from which she fell, can not be said to be substantial evidence upon which to establish that fact in the face of uncontradicted record evidence that the car upon which she took passage a few days after the accident was not the car from which she fell in attempting to alight from it.

It is therefore considered by the court that the judgment of the Circuit Court be, and the same is hereby, reversed.

BROWNE, C. J., AND TAYLOR AND ELLIS, J. J., concur.

WHITFIELD AND WEST, J. J., dissent.