TAMPA ELECTRIC COMPANY, a corporation, v. LOTTIE FLEI-SCHAKER, a widow.

12 So. (2nd) 901                                    January Term, 1943
April 6, 1943                                              En Banc

702

Knight & Thompson, for appellant.
Mabry, Reaves, Carlton & White, for appellee.

CHAPMAN, J.:

We have for review on writ of error a final judgment entered for the plaintiff below by the Circuit Court of Hillsborough County, Florida. The declaration charged negligence on the part of the defendant in three counts. The first count alleged that the defendant stopped its street car at an unsafe place to alight from and invited plaintiff to get off without warning her of the unsafe place or assisting her to alight. Second, failure of the defendant to assist plaintiff in alighting from the car. Third, failure of the defendant to warn the plaintiff of the unsafe conditions where the plaintiff alighted.

The defendant below (appellant here) filed four pleas to plaintiff's declaration. First, a plea of not guilty. Second, that the conditions under and around the stop and the height of the step from the ground were or should have been apparent to the plaintiff had she used reasonable caution but failed so to do, thereby contributing to her own injury. Third, the plaintiff negligently stepped from the street car and thereby proximately contributed to her injury. The fourth plea denied that the place where the street car stopped for plaintiff to alight was unsafe and dangerous and that the ground under and around the stop was unpaved, rough and irregular and traversed the distance from the step to the ground as alleged in the declaration.

The issues made by the pleadings were submitted to a jury, who after hearing all the testimony adduced by the respective parties, visited the scene of the alleged accident, heard argument of counsel and the instructions of the trial court on the law applicable to the issues, and rendered a verdict for the plaintiff in the sum of $4,250.00. A motion for a new trial was made and denied by the trial court. Counsel

for the parties pose for adjudication on this appeal two questions, viz: (1) Was there any substantial evidence adduced at the trial to sustain the verdict and judgment? (2) Is Section 7052 C. G. L., providing for the apportionment of damages resulting from negligence of the parties in actions against railroad companies, applicable in this case?

It is disclosed by the record that the plaintiff, on January 29, 1941, was in her 77th year; was five feet and one inch in height; had a few hours to wait prior to her departure from the City of Tampa, and in consuming the time boarded a street car near the Hillsboro Hotel for a short sight seeing tour of interesting points situated around the Bay between the City of Tampa and Port Tampa. When reaching Russell Street near Ballast Point and before reaching Port Tampa, she concluded to take a car returning to the City of Tampa. In alighting from the street car at Russell Street she fell and sustained described injuries. The witnesses gave testimony as to the fall. The motorman failed to assist the plaintiff when alighting. The step of the car was about 22 inches from the ground; the pictures show a depression at the point where she alighted and these factors undoubtedly caused the plaintiff's injuries. An eye witness testified that the weather was clear and sunshiny and the street dry and this lady (plaintiff) was getting off and as she stepped off down onto the street she fell backwards. The distance from the step of the car to the ground appeared too great for a person of plaintiff's build, but possibly not too far for a taller person.

It is contended that there was nothing about the plaintiff's appearance that suggested aid in making the exit from the car and that the plaintiff failed to establish by competent testimony the material allegations of counts 1, 2, and 3 of the declaration. It was apparent to the motorman that the plaintiff was of small stature; the 22 inches from the steps to the ground was too great for her lower limbs; the depression and ground level at the point of exit were to the motorman discernible. These several contentions present disputes and conflicts, and inferences deducible from the testimony which made issues of fact for a jury under appropriate legal instructions by the trial court.

The plaintiff's injuries, it is contended, were sustained by her when alighting from a street car at a time when it was not in motion but at a stop at Russell Street, and the street car was not being "operated" at the time within the meaning of Section 7051 C. G. L. Likewise, the facts reflected by the record disclose contributory negligence of the plaintiff, as a matter of law, which prevent a recovery by the plaintiff under the several provisions of Section 7052 C. G. L.

Section 768.05 Fla. Stats. 1941 (Section 7051 C. G. L.) provides:

"Liability of Railroad Company.— A railroad company shall be liable for any damage done to persons, stock or other property, by the running of locomotives, or cars, or other machinery of such company, or for damage done by any person in the employ and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company. (Ch. 4071, Acts 1891, Sec. 1)."

Section 768.06 Fla. Stats. 1941 provides:

"768.06. Comparative Negligence.—No person shall recover damages from a railroad company for injury to himself or his property, where the same is done by his consent, or is caused by his own negligence. If the plaintiff and the agents of the company are both at fault, the former may recover, but the amount of recovery shall be such a proportion of the entire damages sustained, as the defendant's negligence bears to the combined negligence of both the plaintiff and the defendant."

The Statutes *supra* are applicable to street railroads. See Consumers' Elec. L. & St. R. R. Co. v. Pryor, 44 Fla. 354, 32 So. 797.

The rationale and conclusions of this Court in previous cases are cited and relied upon by counsel for appellant to establish contributory negligence by the plaintiff as a matter of law, which preclude her recovery. The cases are viz: Atlantic Coast Line R. Co. v. McCormick, 59 Fla. 121, 52 So. 712; Seaboard Air Line Ry. Co. v. Rentz, 60 Fla. 449, 54 So. 20; Taylor v. Prairie Pebble Phosphate Co., 61 Fla. 307, 54

So. 452; Loftin v. Jacksonville Electric Co., 61 Fla. 292, 54 So. 959; Florida East Coast Ry. Co. v. Johnson, 70 Fla. 422, 70 So. 397; Clark v. Atlantic Coast Line R. Co., 141 Fla. 155, 192 So. 621; Cline v. Powell, 141 Fla. 119, 192 So. 628; Crenshaw Bros. Produce Co. v. Harper, 142 Fla. 27, 194 So. 353. Other cited cases will be subsequently considered.

It is contended that contributory negligence by the plaintiff appears, as a matter of law, and in light of the authorities *supra,* she is barred from recovery and that it was error on the part of the trial court to refuse appellant's· requested instruction, viz:

"In addition to its plea of not guilty the defendant has filed two pleas of contributory negligence. These are affirmative pleas; that is to say, the negligence with which the plaintiff is therein charged must be proven by a fair preponderance of the evidence just as the negligence with which the defendant is charged in the plaintiff's declaration must be proven. However, notwithstanding this rule, the defendant is entitled to the benefit of any evidence produced by the plaintiff showing negligence on the part of the plaintiff, whether such negligence is that with which the plaintiff is charged in the pleas or not. Therefore, if, in your opinion, the plaintiff's evidence shows that she was guilty of negligence which proximately contributed to her own injury you must find for the defendant even though you find that the defendant was also guilty of negligence as charged in the plaintiff's declaration. The law does not undertake to apportion the consequences of mutual negligence, and if one is injured through the negligence of another but is himself guilty of some degree of negligence proximately contributing to his injury that person cannot recover even though the negligence of which the other party was guilty was greater than the negligence of the injured party. It is only necessary that the injured party is guilty of negligence which proximately contributes in any appreciable degree to the injury sustained."

A Florida statute prescribing the duties of the motorman to the plaintiff at the time she made her exit from the street car has not been cited. It is not shown by the testimony that

she on leaving the car requested aid or assistance of the motorman. It appears that she alighted within the range of the vision of the motorman. He was apprised of her height; observed, or had an opportunity to observe, the approximate distance of 22 inches from the step of the car to the ground; the irregular and uneven surface of the ground or street below the car step; the relation of passenger and carrier then existed, and can it be said that the personal safety of the passenger under these circumstances was of no concern of the carrier and in attempting to alight from the car she contributed to her injury in such a measure as will bar a recovery? What are the legal duties of the respective parties under these conditions and circumstances?

The trial court was of the view that Tampa Elec. Co. v. Soule, 84 Fla. 557, 94 So. 692; Louisville & N. R. Co. v. Norton, 75 Fla. 597, 78 So. 982, were controlling. In the Soule case, *supra,* it was made to appear that Miss Soule was a passenger and desired to alight at Franklin and Zack Streets. The car stopped and passengers alighted. Miss Soule's skirt or dress caught on something in the car as she stepped from the car onto the step and fell and sustained injuries. This Court reversed a judgment in her behalf, and, in part, said (text 84 Fla. 572):

"In a long line of cases in which the construction of the quoted statute was involved, this court has invariably held that the injury or damage sustained by one upon railroad property does not raise the presumption of a negligent act or omission on the part of the company in violation of some duty which it owed to the person injured, but that before the presumption of negligence attaches it must first be shown that the railroad company's act produced the injury before the presumption created by the statute can be invoked. The act of stopping its cars that passengers may alight at their destination may be included in the language 'running of the locomotives, or cars, or other machinery,' so that if in the act of stopping its cars it causes an injury to a passenger, or any other person, the presumption that the act was a negligent one could be invoked under the statute."

In the case of Louisville & N. R. Co. v. Norton, 75 Fla.

597, 78 So. 982, the plaintiff was a passenger from Marianna to River Junction. The flagman erroneously announced that the next stop would be River Junction, but stopped the train on the trestle over the Apalachicola River. The plaintiff, believing the flagman's erroneous announcement, thought the train had reached River Junction. It was in the night time. The plaintiff stepped from the steps of the train and fell into the trestle and sustained enumerated injuries. This Court, in sustaining a verdict and judgment for the plaintiff, in part, said:

"In view of the high degree of care and attention the carrier owed to its passengers the alleged careless and negligent stopping of the train under all the circumstances as stated in the count, resulting in injury to the plaintiff, give rise to a cause of action for damages sustained, the recovery under the statute to be diminished in proportion to the contributory negligence, if any, of the plaintiff. See Seaboard Air Line Ry. Co. v. Callan, 73 Fla. 688, 74 South Rep. 799; Atlantic Coast Line R. R. v. Holliday, 73 Fla. 269, 74 South. Rep. 479; Tampa & J. R. Co. v. Crawford, 67 Fla. 77, 64 South. Rep. 437; Standard Phosphate Co., v. Lunn, 66 Fla. 220, 63 South. Rep. 429."

The step plaintiff was required to alight from was about 22 inches from the ground. The motorman knew, or by the exercise of ordinary care should have known, that the step was unreasonably high. It became the duty of the motorman to lend such assistance to the plaintiff as was necessary for her protection under the circumstances. See 10 Am. Jur. 229, par. 1378; Southern Railway Co. v. Laxson, 217 Ala. 1, 114 So. 290; 55 A.L.R. 385, and annotations beginning with page 389. Where a passenger's mental or physical weakness is apparent, or it is brought to the attention of the carrier, the high degree of care or caution ordinarily imposed on carriers require it to take notice of the passenger's disability and provide accordingly. See Am. Jur. par. 1273, p. 184, and authorities cited in footnotes. 10 C.J. par. 1363, p. 944, states the rule thusly:

". . . where a street railroad operates its tracks beyond the limits of the city through uneven, open country, it is

governed by the rules regulating steam railroads as to the receipt and discharge of passengers. Thus it is the duty of the employees in charge of street cars to exercise toward every passenger getting on or alighting from a car that high degree of care which prudent persons engaged in the operation of cars exercise for the safety of passengers under like circumstances; but this degree of care is not in its application to all persons always the same, as what would be sufficient care as to one person might not be sufficient as to another . . ."

See also 13 C. J. S. par. 723-724, pp. 1352-1358.

Shearman and Redfield on Negligence, Vol. 3 (Rev. Ed.) par. 516, pp. 1319-21, defines the duty of a carrier to a passenger in getting on or off cars thusly:

"516. Duty to Assist Passengers in Getting On and Off.— The obligation of a carrier to assist passengers in getting on and off depends largely upon the nature of his vehicle, the facility with which access may be had without assistance, and similar circumstances.

"The duty to assist, or warn, or guide and protect, not in itself a direct duty, may arise from the unusual conditions created by the place of stoppage, which place is not in itself the violation of a direct duty. Thus, where a ship lies considerably above the level of the pier, and no plank is run ashore, or where she lies at a distance from the shore, the master, if he has undertaken to carry passengers, is bound to hoist them aboard.

"So a railroad company, stopping its train for passengers at a place so steep or inconvenient that they could not easily get on or off the train, would be bound to assist them to do so. But when access is easy, without such aid, as where a guarded plankway is laid from a ship to the pier, or the platform of a railroad car is attainable by steps of ordinary length, and otherwise convenient, assistance cannot be required as of right. Under circumstances which would lead reasonable and humane persons to render such assistance, a jury may find that a sick or infirm passenger should be assisted to alight; and if the carrier is accustomed to provide assistance for such purposes, an infirm person has a right to

expect that he will be in like manner assisted; and, having set out upon his journey in reliance upon the carrier's custom, he is entitled to its continuance in his favor. How far a passenger may be justified in taking the risk of entering without assistance or convenient accommodation, where none is provided, is a question to be considered when treating of contributory fault."

It is our conclusion, based on the record and the authorities cited, that the appellant was negligent because of its failure to provide a safe place for the plaintiff to alight from its car, and because of the peculiar circumstances of this case, in not assisting the plaintiff below in her effort to alight. The plaintiff likewise was guilty of contributory negligence in alighting from the car. Her advanced years, the length of her lower limbs, the 22 inches from the step to the ground, the vision of old age possibly prevented her from seeing or observing the 22 inch space and the irregular and uneven ground on which she was about to step, coupled with her failure to request aid or assistance in her effort to alight, are some of the factors disclosed by the testimony and considered by the jury in the rendition of its verdict. The facts of the controversy are controlled by Section 768.06, Fla. Stats. 1941 (Section 7052. C.G.L.)

The appellant's motion for a new trial challenged the verdict on the ground of excessiveness. It is the view of Mr. Justice TERRELL and the writer that the plaintiff should file a remittitur in the sum of $1250.00 and the verdict and judgment should be affirmed in the sum of $3000.00; while BUFORD, Chief Justice, and Justices BROWN, THOMAS, ADAMS and SEBRING are of the view that the verdict and judgment should be affirmed without a remittitur. We fail to find error in the record and accordingly the judgment of the lower court is hereby affirmed.

It is so ordered.

BUFORD, C. J., TERRELL, BROWN, THOMAS, ADAMS and SEBRING, JJ., concur.